THE PEOPLE ex rel. Maclay Hoyne, State's Attorney, Appellant, vs. ALEXANDER A. McCORMICK, Appellee.

*Opinion filed December 17, 1913—Rehearing denied Feb. 6, 1914.*

1. CONSTITUTIONAL LAW—*what is meant by term "the board of county commissioners," as used in constitution.* The term "the board of county commissioners," used in section 17 of article 6 and section 6 of article 10 of the constitution of 1870, refers to the three officers elected in counties not under township organization and does not refer to the board of commissioners of Cook county.

2. SAME—*eligibility provision of section 17 of article 6 does not apply to members of board of commissioners of Cook county.* The provision of section 17 of article 6 of the constitution of 1870 that no person shall be eligible to membership in "the board of county commissioners" unless he shall have resided in the State at least five years next preceding his election does not apply to the board of commissioners of Cook county.

3. SAME—*eligibility provision of section 6 of article 7 of constitution construed.* The provision of section 6 of article 7 of the constitution that "no person shall be elected or appointed to any office in this State, civil or military, who is not a citizen of the United States, and who shall not have resided in this State one year next preceding the election or appointment," is not limited to State officers, ·but includes county, city or municipal officers provided for in the constitution without any specific requirement as to residence.

4. SAME—*the legislature cannot change qualifications fixed by the constitution.* The legislature has entire control over an office created by statute, but where the constitution creates an office and fixes the qualifications for such office it is not within the power of the legislature to change or add to them unless the constitution itself gives such power.

5. SAME—*provision of act of 1893 as to residence of members of board of county commissioners of Cook county is invalid.* The provision of section 4 of the act of 1893 that each member of the board of commissioners of Cook county shall have resided in said county for five years next preceding the election is invalid as in conflict with section 6 of article 7 of the constitution, which fixes the qualification of residence within the State at one year.

6. SAME—*constitutional declaration as to qualification for office is conclusive although in negative form.* A constitutional provision that no person shall be elected to office who "shall not have resided in this State one year next preceding the election" is con-

clusive though negative in form, and the legislature cannot impose additional requirements as to residence, upon the theory that such provision merely fixes a minimum requirement in that regard.

7. OFFICES—*eligibility to office does not depend upon right of suffrage.* All persons are equally eligible to office who are not excluded by some constitutional or legal disqualification, and the fact of eligibility does not even depend upon the right of suffrage.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

MACLAY HOYNE, State's Attorney, (CHARLES H. MITCHELL, and ISAIAH T. GREENACRE, of counsel,) for appellant.

MILLER, STARR, PACKARD & PECKHAM, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook county dismissing an information in the nature of *quo warranto* questioning the title of the appellee to the office of commissioner of the county of Cook and president of the board of commissioners. There were four counts, many pleas, more replications and numerous demurrers, but it will not be necessary to set them out in detail. The facts were admitted by the pleadings and the only controversy was as to the eligibility of appellee. He had resided in Illinois more than one year and less than five years immediately preceding his election. The appellant contends that under section 17 of article 6 of the constitution no person is eligible to the office of commissioner of Cook county who has not resided in this State five years next preceding his election, and that under section 4 of the "act to revise the law in relation to the election of county commissioners in Cook county, and to fix their term of office," (Laws of 1893, p. 92; Hurd's Stat. 1911, p. 632;) no person is eligible unless he has been a resident of the county for five years next preceding his election.

Section 17 of article 6 of the constitution is as follows: "No person shall be eligible to the office of judge of the circuit or any inferior court, or to membership in the 'board of county commissioners,' unless he shall be at least twenty-five years of age, and a citizen of the United States, nor unless he shall have resided in this State five years next preceding his election, and be a resident of the circuit, county, city, cities or incorporated town in which he shall be elected."

Section 6 of article 10 is as follows: "At the first election of county judges under this constitution, there shall be elected in each of the counties in this State, not under township organization, three officers, who shall be styled 'The board of county commissioners,' who shall hold sessions for the transaction of county business as shall be provided by law. One of said commissioners shall hold his office for one year, one for two years, and one for three years, to be determined by lot; and every year thereafter one such officer shall be elected in each of said counties for the term of three years."

Section 7 of article 10 is as follows: "The county affairs of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected from the city of Chicago, and five from towns outside of said city, in such manner as may be provided by law."

This is the first appearance in this State of a body exercising public authority and having the legal name of "The Board of County Commissioners." The constitution of 1818, by section 4 of the schedule, provided for the election of three county commissioners in each county for the purpose of transacting all county business, whose term of service, powers and duties should be regulated and defined by law. The first legislature enacted that there should be established in each county a court of record, composed of the commissioners of the county, which should be called "the county commissioners' court." (Laws of 1819, p.

175.) Its only object or authority was the management of
the business of the county. Though called a court of rec-
ord it had no civil or criminal jurisdiction and no power
except in the conduct of the county's affairs. The county
commissioners' courts continued until they were abolished
by the constitution of 1848, which provided for the trans-
action of the county's business by a county court, composed
of the county judge and two associate justices of the peace,
and directed that the county commissioners' courts should
continue in existence and exercise their jurisdiction until
the county court provided for in the constitution should be
organized in pursuance of an act of the General Assembly
to be passed at its first session. This constitution required
the General Assembly to provide by a general law for a
township organization, under which any county might or-
ganize if it should so elect, in which case the management
of the fiscal affairs of the county by the county court might
be dispensed with and the affairs of the county transacted in
such manner as the General Assembly might provide. The
first legislature passed an act on February 12, 1849, es-
tablishing county courts, (Laws of 1849, p. 62,) and on
the same day an act to provide for township organization.
(Laws of 1849, p. 190.) The latter act was repealed and
another act substituted for it by the next General Assembly.
(Laws of 1851, p. 35.) After the enactment of these laws
there were no longer any county commissioners. In every
county under township organization the county business was
conducted by the board of supervisors; in every county
not under township organization by the county court, which
had all the power, jurisdiction and authority of the county
commissioners' court. Cook county adopted township or-
ganization at an election held on November 6, 1849, and at
the time the constitution of 1870 was adopted, and long
afterward, was under township organization. Most of the
other counties in the State had adopted township organiza-

tion, but there still remained, and yet remain, a number of counties which are not under township organization.

When the convention of 1870 met there were no corporate authorities known as the board of county commissioners. By the adoption of the constitution that name was given to a certain class of corporate authorities,—that is, to the three officers elected in counties not under township organization and charged with the transaction of the county business. When the constitution, in fixing the conditions of eligibility to certain offices, referred to the board of county commissioners, it is to be inferred that it meant the body lawfully bearing that name given to it by the constitution itself. The words "board of county commissioners" in both section 17 of article 6 and section 6 of article 10 are in quotation marks. This is a circumstance worthy of some consideration in determining whether the expression in both places refers to the same thing. It is argued that the ordinary meaning of the words "board of county commissioners," used in section 17 of article 6 of the constitution, includes a board of commissioners, who shall have charge of the county affairs of the county, as well as officers who shall be styled "the board of county commissioners," who shall hold sessions for the transaction of county business as may be provided by law. The words used are, "the board of county commissioners." The definite particle "the" is a demonstrative word which particularizes the noun before which it stands and limits its meaning more definitely and particularly than the indefinite particle "a." "The board of county commissioners" refers to a more definite conception than "a board of county commissioners," and the quotation marks add to the preciseness of expression and indicate an exact transfer of the words from some other place. If the five years' residence had been intended to apply to any county commissioner the language used would naturally have been like that used with refer-

ence to the judges, and the section would have read, "no person shall be eligible to the office of judge of the circuit or any inferior court or county commissioner." The form of expression was changed, however, and the language limited to membership in the "board of county commissioners,"—a definite body having that legal name and existing only in counties not under township organization. The board of county commissioners is a body of three members, elected by the whole county, one each year, for a three-year term, under constitutional provisions. It gets its name from the constitution itself, and it is to that body that the phrase in section 17 of article 6 refers. The board of commissioners of Cook county is a body of fifteen members, whose election is not by the whole county but is left to the discretion of the legislature, with no constitutional restriction except that ten of them shall be elected from the city of Chicago and five from towns outside the city.

Counsel for the appellant rely upon what they call the contemporaneous construction given to the phrase by the legislature, the courts and executive and administrative officers and the appellee himself. This construction consists in the reference to the board of commissioners of Cook county in various acts of the legislature, decisions of courts, and executive and official documents, as a board of county commissioners. There has been no construction of the phrases in question in any other way. No act done by any officer, court or any other body has been suggested based upon any construction of the meaning of the words of the constitution. One count of the information states a great variety of names by which the officer is commonly known, including "county commissioner," "commissioner of Cook county," "county commissioner of Cook county," "member of the board of commissioners of Cook county" and "member of the board of county commissioners of Cook county," but this does not tend to show any contemporaneous construction of the constitutional provision.

The act of 1893, heretofore mentioned, "to revise the law in relation to the election of county commissioners in Cook county, and to fix their term of office," provides, in section 4, that "each of the commissioners shall have been a resident of said county for five years next preceding the election." This statute is relied upon by the appellant to reverse the judgment, but it is insisted by the appellee that the sentence just quoted is unconstitutional and void because of section 6 of article 7 of the constitution, which declares that "no person shall be elected or appointed to any office in this State, civil or military, who is not a citizen of the United States, and who shall not have resided in this State one year next preceding the election or appointment." The appellee insists that by this section the constitution has fixed the qualification which shall be required of a commissioner, so far as residence is concerned, at one year, and that the legislature has no power to change it. The appellant contends that this section applies only to State officers, and, in any event, it only fixes the minimum requirement as to residence, which it is within the power of the legislature to increase. The language is not limited to State officers but is broad enough to apply to all public officers within the boundaries of the State. Other sections limit the eligibility of persons to particular offices, the qualifications being confined to citizenship, age and residence. The general language is sufficiently comprehensive to include county, city and other municipal officers, and in our judgment it was intended to include all officers which are provided for by the constitution.

All persons are equally eligible to office who are not excluded by some constitutional or legal disqualification. Eligibility does not even depend upon the right of suffrage, for persons not electors may be appointed or elected to various offices. For instance, a woman may be elected county superintendent of schools or appointed master in chancery or notary public. It is the right of the people to elect any

eligible person to an office, and it is the duty of the person chosen to qualify and perform the duties of the office. *(People* v. *Williams,* 145 Ill. 573.) Where the constitution declares the qualifications for office it is not within the power of the legislature to change or add to them unless the constitution gives that power. "It would seem but fair reasoning, upon the plainest principles of interpretation, that when the constitution established certain qualifications as necessary for office it meant to exclude all others as prerequisites. From the very nature of such a provision the affirmance of these qualifications would seem to imply a negative of all others. * * * A power to add new qualifications is certainly equivalent to the power to vary them." (1 Story on the Constitution, sec. 625.)

In his opinion in the case of *Barker* v. *People,* 3 Cow. 686, in the court of errors of New York, Chancellor Sanford said: "Eligibility to public trusts is claimed as a constitutional right, which cannot be abridged or impaired. The constitution establishes and defines the right of suffrage and gives to the electors and to various authorities the power to confer public trusts. It declares that ministers of religion shall be ineligible to any office; it prescribes, in respect to certain offices, particular circumstances without which a person is not eligible to those stations; and it provides that persons holding certain offices shall hold no other public trust. Excepting particular exclusions thus established, the electors and the appointing authorities are by the constitution wholly free to confer public stations upon any person according to their pleasure. The constitution giving the right of election and the right of appointment,—these rights consisting essentially in the freedom of choice,—and the constitution also declaring that certain persons are not eligible to office, it follows from these powers and provisions that all other persons are eligible. Eligibility to office is not declared as a right or principle by any express terms of the constitution, but it results

as a just deduction from the express powers and provisions of the system. The basis of the system is the absolute liberty of the electors and the appointing authorities to choose and to appoint any person who is not made ineligible by the constitution. Eligibility to office, therefore, belongs not exclusively or especially to electors enjoying the right of suffrage; it belongs equally to all persons whomsoever not excluded by the constitution. I therefore conceive it to be entirely clear that the legislature cannot establish arbitrary exclusions from office or any general regulation requiring qualifications which the constitution has not required. If, for example, it should be enacted by law that all physicians or all persons of a particular religious sect should be ineligible to public trusts, or that all persons not possessing a certain amount of property should be excluded, or that a member of the assembly must be a freeholder,—any such regulation would be an infringement of the constitution, and it would be so because, should it prevail, it would be, in effect, an alteration of the constitution itself."

There is a distinction between offices created by the constitution and those created by statute. Where an office is created by statute it is wholly within the power of the legislature creating it. The length of term and mode of appointment may be altered at pleasure and the office may be abolished altogether. (*People* v. *Loeffler,* 175 Ill. 585; *People* v. *Olson,* 245 id. 288.) It is not so of constitutional offices. Section 3 of article 4 of the constitution declares that no person shall be a senator who shall not have been for two years next preceding his election a resident within the district from which he is elected. An act requiring a candidate for senator under certain circumstances to be nominated from a particular county of the district was held to be not within the power of the legislature, for the reason that it added to the qualifications required by the constitution by imposing the additional restriction as to residence. *People* v. *Election Comrs.* 221 Ill. 9.

Since the constitution has declared that all elections shall be free, each elector is entitled to cast his vote for any eligible person for any office provided for by the constitution, free from any restraint not authorized by the constitution itself. The legislature may determine the manner of conducting elections and the means of ascertaining and declaring the result, but it has no right to interfere with the freedom of choice, which is the meaning of freedom of election. It is essential to the freedom of elections mentioned in the constitution that every voter shall be permitted to choose from all eligible persons and shall not be required to choose from certain classes. As he cannot be restricted in his choice of senators to residents of a particular county, as has been mentioned, so he cannot be restricted in his choice of Governor to persons who are more than thirty-five years of age or have been citizens of the United States for ten years; in his choice of Attorney General to those who have been practicing lawyers for five years; in his choice of superintendent of public instruction to persons holding a State teacher's certificate; or in his choice of lesser officers named in the constitution to persons who have resided in the State for a period longer than one year.

While counsel for the appellant concede that a constitutional provision as to eligibility to office of such a nature that it covers the whole subject matter, by necessary implication prohibits any addition to or change in the qualifications prescribed, yet they contend that as to qualifications which affect the fitness for office, of which it is said residence is one, the constitutional provision is only a minimum or maximum limitation, leaving to the legislature a reasonable but not arbitrary discretion to add further reasonable requirements. The cases of *State* v. *Covington,* 29 Ohio St. 102, *Darrow* v. *People,* 8 Colo. 417, and *State* v. *McCallister,* 38 W. Va. 485, support the argument, but we do not approve the conclusion reached in those cases. The other two cases cite and rely upon the Ohio case, and the

opinion in the latter case substantially disposes of the question by saying that "the express provision of the constitution is that a person not an elector shall not be elected or appointed to any office in this State. Now, unless the clear implication is that every person who has the qualifications of an elector shall be eligible to any office in this State there is no conflict between the statute and the constitution. I do not believe that such implication arises. There are many offices the duties of which absolutely require the ability of reading and writing the English language. There are many electors who, from habit of life and otherwise, are wholly unfit to discharge the duties of many offices within the State. If the framers of the constitution had intended to take away from the legislature the power to name disqualifications for office other than the one named in the constitution, it would not have been left to the very doubtful implication which is claimed from the provision under consideration."

It may be true that many persons having the constitutional qualifications are wholly unfit to discharge the duties of many offices within the State, but if the legislature possesses the power to vary the constitutional qualifications for office by adding new requirements or imposing additional limitations, then eligibility to office and freedom of elections depend, not upon constitutional guaranties, but upon legislative forbearance. If the legislature may alter the constitutional requirements its power is unlimited, and only such persons may be elected to office as the legislature may permit. In our judgment, when the constitution undertakes to prescribe qualifications for office its declaration is conclusive of the whole matter, whether in affirmative or in negative form. Eligibility to office belongs to all persons. In our constitution no other form of stating eligibility to office is found than the declaration that no person shall be eligible who does not possess certain qualifications. The constitution of the United States is in the same form

in this particular, and so are the constitutions of other States. The expression of the disabilities specified excludes others. The declaration in the constitution that certain persons are not eligible to office implies that all other persons are eligible.

Certain questions of estoppel supposed to have arisen by reason of the nomination of the appellee by a primary election, and facts in connection with such nomination, have been argued but have not been considered.

The judgment is affirmed. *Judgment affirmed.*