MARION A. HUMPHREYS *v.* ALBERT M. WALLS
[No. 79, October Term, 1935.]

*Decided November 22nd, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, and SHEHAN, JJ.

*F. Leonard Wailes* and *Alexander Armstrong,* for the appellant.

*Lewis C. Merryman,* for the appellee.

SLOAN, J., delivered the opinion of the Court.

Albert M. Walls, a citizen and taxpayer of Wicomico County, appellee and plaintiff, filed his petition in the

Circuit Court for Wicomico County, praying a writ of mandamus, to oust the appellant and defendant, Marion A. Humphreys, from the office of justice of the peace for election districts 5, 9, and 13 of Wicomico County, also designated or named "Judge of the People's Court" by the Acts of 1927, ch. 329, to which he had been appointed by the Governor of Maryland, to fill a vacancy caused by the death of David Dallas. The defendant demurred, and his demurrer being overruled, he answered, and the demurrer to his answer being sustained and the mandamus ordered, he appealed. *Price v. Ashburn*, 122 Md. 514, 89 A. 410.

The petition made two charges, one, that the defendant, Marion A. Humphreys, being a resident of election district No. 16, and a non-resident of election districts No. 5, 9, and 13, was ineligible to appointment; two, that the Acts of 1927, ch. 329, as amended by the Acts of 1929, ch. 19, "in so far as it relates to the creation and existence of a Justice of the Peace in and for the 5th, 9th and 13th Election Districts of Wicomico County, Maryland, and a Judge of the People's Court is unconstitutional, null and void, in that it attempts to create a Justice of the Peace for three election districts," and "that the law under which said appointment was made, is unconstitutional and void and the office to which he was appointed does not exist." The answer admits the nonresidence of the defendant and denies the contention of the plaintiff that the Act of the General Assembly establishing the "Peoples Court" at Salisbury is unconstitutional, and contends that nonresidence in one of the three election districts is not a disqualification.

The authority for the establishment of the "Peoples' Court" at Salisbury, located in those three named election districts, is derived from the Acts of 1927, ch. 329, and the amendments thereto by the Acts of 1929, ch. 19, (Code Pub. Loc. Laws [1930], art. 23, sec. 97 *et seq.*), the first two sections of which, providing for the appointment and prescribing qualifications of the "Judge of the People's Court," are as follows:

"97. There shall be appointed by the Governor at the session of the General Assembly of Maryland in the year 1927, one Justice of the Peace for each Election District in Wicomico County, who shall hold office for such time as is now or may hereafter be provided by law, except that for Election Districts Numbers 5, 9 and 13 in said Wicomico County, there shall be appointed one Justice of the Peace and none other, the said Justice of the Peace so appointed to be known as 'the Judge of the Peoples Court,' and to be so appointed and possess the qualifications, jurisdiction and powers as is hereinafter provided.

"98. Said Justice of the Peace to be known as 'the Judge of The Peoples Court' shall be appointed by the Governor, subject to confirmation by the Senate of Maryland, for the term of two years and biennially thereafter; his term shall begin on the first Monday in May after his appointment, and he shall hold office until his successor is duly appointed and qualified; said Judge of The Peoples Court shall be a resident and duly qualified voter of one of the Election Districts for which he is appointed; he shall be at least twenty-five years of age at the time of his appointment, and shall be a man of integrity: when so appointed he shall qualify before the Clerk of the Circuit Court for Wicomico County by subscribing and taking oath of office in the same manner as Justices of the Peace now qualify; said Judge of The Peoples Court, if he be a member of the bar, shall not during the term for which he is appointed engage directly or indirectly in the practice of law; in case of vacancy, death, removal from office, resignation or otherwise, the Governor shall appoint a duly qualified person or persons to serve for the unexpired term of said Judge of The Peoples Court; the term of office or the compensation of said office shall not be diminished during the term for which he is appointed."

Section 97 amended the Acts of 1880, ch. 428 (Code Pub. Loc. Laws 1888, art. 23, sec. 54), which provided for the appointment of twenty-five justices of the peace

in Wicomico County, varying for the several districts from two to four in number.

The subsequent sections of the acts of 1927 and 1929, fixed the compensation, jurisdiction, and duties of the "Judge of the People's Court," allowed the judge to make rules of practice and procedure, and required that actions by a nonresident must be accompanied by an affidavit "such as is required" by the local Speedy Judgment Act in the Circuit Court, fixed the time of appeal at twenty days, and required the appellant to take a pauper's oath before papers be transmitted on appeal to the Circuit Court, unless the costs be paid, and for the laying of rules for security for costs against "non-resident litigants." Subsection 54-G (Code Pub. Loc. Laws 1930, art. 23, sec. 104), provided for a seal for "purposes of identification." Provision was made by subsection 54-J (article 23, sec. 107) for a clerk with power to "administer oaths in any manner before said Court, and, in the name of the Judge of the People's Court and under the seal of said Court, to issue all process of said Court," and provided for an additional salary of $1,000 per year to the state's attorney "for his attendance before the People's Court."

Subsection 54-J-1 (article 23, sec. 108) provided fees to be charged differing from that of the other justices of the peace in the county, and subsection 54-K (article 23, sec. 109) for the levy of the salaries and expenses of the office.

Section 2 of the act (article 23, sec. 112) provided that the unconstitutionality of any part of the act should not invalidate the entire act.

These are extensive and important changes, revolutionizing in many respects the jurisdiction and procedure in those small tribunals established for the settlement of petty causes and the trial of minor offenses, which, for centuries, because of the speed in dispatching business, informality of procedure, and inexpensiveness of litigation, have been regarded as peculiarly appropriate for the settlement of such matters. They are made a part of

our judicial machinery by the Constitution of our State, and no legislative act abolishing them or radically changing their character should be recognized as valid.

The authority for the appointment of justices of the peace by the Governor, and the sole authority for the establishment of justices' courts in this state, from which is derived not only the power of appointment by the Governor, but the right of an appointee to take office, is section 42 of article 4 of the Constitution, by which it is provided that: "The Governor, by and with the advice and consent of the Senate, shall appoint such number of Justices of the Peace * * * for the several Election Districts of the counties and wards of the City of Baltimore, as are now or may hereafter be prescribed by Law. * * * The Justices of the Peace * * * so appointed and commissioned * * * shall hold their office for two years, and shall have such jurisdiction, duties and compensation * * * as hath been heretofore exercised, or shall be hereafter prescribed by Law."

This constitutional provision does not prescribe any age or residence qualifications for a justice of the peace, of which Mr. Niles says in his Maryland Constitutional Law: "It will be noticed that there are no 'qualifications' required for a justice of the peace. He may not be a lawyer. No particular length of residence is required. Even the qualifications that the official be a citizen, a male and an adult, are only implied." The book was published before women had the vote. So far as fitness and suitability are concerned there is, however, a check on the Governor, in the approval required of the State Senate. After qualification they can only be removed for the specified causes, after conviction, by the judge of the criminal court. In all other respects, their jurisdiction, powers, duties, and compensation are made subject to legislative control.

The exact question here presented has not been before this court, but closely related questions have in the cases of *Levin v. Hewes*, 118 Md. 624, 86 A. 233, and *Day v. Sheriff of Montgomery County*, 162 Md. 221, 159 A. 602,

but we have had the contemporaneous construction of it from legislative usage from the Constitution of 1851 to very recent years, when, in several of the counties, the Legislature, in imitation of the People's Court in Baltimore City, has provided for such courts for groups of election districts within a county. It is, therefore, apparent that the most important question here is whether the Legislature can restrict the number of justices of the peace in any county below one for each of the several districts in a county.

While the construction of statutes or constitutional provisions is a judicial function, courts may, in declaring their meaning and effect, avail themselves of the construction put upon them by the Legislature by long continued custom and acquiescence. As said by this court, in an opinion by Chief Judge McSherry in *Trustees of Catholic Cathedral v. Manning*, 72 Md. 116, 130, 19 A. 599, 603, "A contemporaneous construction placed upon a particular provision of the organic law by the legislative department of the government, acquiesced in and acted upon without ever having been questioned, followed continuously and uniformly from a very early period down * * * furnishes a very strong presumption that the intention is rightly interpreted." *State v. Mayhew*, 2 Gill, 487; *Levin v. Hewes*, 118 Md. 624, 641, 86 A. 233, 239.

Now what has been the long-continued practice of the Legislature with respect to the constitutional provision for the designation of the number of justices of the peace in a county or district?

The Constitution of 1851, article 4, sec. 19, provided: "The legislature at its first session after the adoption of this constitution shall fix the number of justices of the peace and constables for each ward of the city of Baltimore, and for each election district in the several counties, who shall be elected," etc. This was followed by the Acts of 1852, ch. 274, which fixed the number of justices of the peace and constables in each of the wards of Baltimore City and in each of the election districts in every

county of the state. Local laws for the counties and Baltimore City were subsequently passed, but in each and all of them provision was made for at least one justice of the peace for every ward of Baltimore City, and for each election district of the several counties. The constitutional mandate to the Legislature to fix the number of justices of the peace for each ward and election district was not only carried into effect for such wards and election districts as then existed, but provision was made by section 3 of the act of 1852 for the future, by providing that, for each new election district in the several counties of the state and for each additional ward in the city of Baltimore, there should be "two justices of the peace, unless a different number be specially provided by law," and this section is still in force. Code Pub. Gen. Laws 1924, art. 52, sec. 4.

The Constitution of 1867, art. 4, sec. 42, contains the same provision as, and almost the exact verbiage of, the Constitution of 1864, art. 4, sec. 47, and the only substantial difference between them and the Constitution of 1851 is that the latter provided for the election of justices of the peace and constables, and all of them provided for the designation by the Legislature of the number for the several election districts of the counties and wards of Baltimore City. Nothing could be plainer than the command to the Legislature to fix the number of justices of the peace for each and all of such election districts and wards, and the history of the Acts of Assembly, for seventy years, beginning with the act of 1852, shows, without variation, that the Legislature so regarded and construed the constitutional provision.

Section 42 of article 4 of the Constitution says what the Legislature may do with respect to justices of the peace. It shall determine the number for the several election districts of the counties and wards of Baltimore City, and shall prescribe their "jurisdiction, duties and compensation." Within the limits of this section (42) the Legislature can go, and no farther, nor anything short of its requirements.

It was recently decided by this court in *Day v. Sheriff of Montgomery County*, 162 Md. 221, 159 A. 602, that the limit of jurisdiction of any justice of the peace was the county, and this was long ago recognized by the Legislature in the provisions of sections 6 and 12, article 52, Code of Public General Laws, conferring jurisdiction over the entire county, that is the right to try cases from anywhere in the county. For many counties various local laws have been passed limiting the activities of justices of the peace, in some requiring them to sit in certain designated districts, in some fixing salaries in lieu of fees in the larger towns and congested areas, in some that one may be sued only in the district of his residence or the one where the contract sued on was made, and other provisions not here involved. No matter what local practice may be prescribed, justices of the peace are appointed for the district, but, as every writ indicates, they are justices of the peace in and for the county.

The Act of Assembly here under consideration fixes a minimum age limit for the "Judge of the Peoples' Court" at Salisbury in three election districts, 5, 9, and 13, at twenty-five years. It gives the appointee jurisdiction over all of Wicomico County. This means that they have two standards of qualification for justices of the peace in that county, by one of which a judgment might be valid if entered by a twenty-one-year old justice, and invalid unless entered by one twenty-five years of age. The jurisdiction of magistrates to try cases and enter judgments cannot depend on the age of the incumbent.

Another conflict is in the amount which may be involved, and here we have two standards: the "Judge of the People's Court" has jurisdiction in civil suits up to $300, while the other justices of the peace have jurisdiction up to $200. It could not be contended or argued that one justice of the peace could enter a judgment for $300 in a district where another justice of the peace could only enter a judgment up to $200. Because the appellant here is called "Judge of the People's Court," he must be a justice of the peace, or he has neither title nor office. If he is not a justice of the peace, then he assumes to

preside over a court which is not authorized by the Constitution, article 4, sec. 1.

There is another inconsistency in the act, which is one that would disqualify the appellant, if the act under which he was appointed be valid, and that is the matter of residence. The Constitution says the Governor shall appoint justices of the peace "for the several Election Districts of the counties and wards of the City of Baltimore." The authority of the Governor in Wicomico County is prescribed by section 97 of article 23 of the Code of Public Local Laws (1930) which provides that he shall appoint "one Justice of the Peace for each Election District in Wicomico County, * * * except that for Election Districts Numbers 5, 9, and 13 in said Wicomico County, there shall be appointed one Justice of the Peace and none other, the said Justice of the Peace so appointed to be known as 'the Judge of the Peoples Court,' and to be so appointed and possess the qualifications, jurisdiction and powers as is hereinafter provided," and by the next succeeding section he is required to be "a resident and duly qualified voter of one of the Election Districts for which he is appointed." The other justices of the peace may or may not reside in the districts for which they are appointed, but the "Judge of the People's Court" must reside in one of the three districts for which he is appointed. This is a qualification of the appointee, and an exclusion of all who might otherwise be qualified, which the Constitution neither authorizes nor warrants. In order to harmonize this condition created by a statute with the constitutional provision, it can only be sustained on the ground that it is directory and not mandatory (*Upshur v. Baltimore,* 94 Md. 743, 744, 51 A. 953), and is one which the Governor may observe or ignore as he pleases. In this state the office of justice of the peace is a constitutional office, and any legislative action with respect to it and its incumbents must come within and not vary from the provisions of the Constitution creating it. The eligibility, fitness, and qualifications of justices of the peace are left, not to the Legislature, but to the Governor, and then to the State Senate; the Gov-

ernor appoints, the Senate only approves or rejects. When it comes to the duties, jurisdiction, and compensation, and the number to be appointed for each election district or ward, the Legislature as a whole is authorized to act. Inasmuch as the constitutional provision for the appointment of justices of the peace enumerated the things that the Legislature as a whole could do with respect to justices of the peace, it must have intended its power over the office and its appointees to stop there.

It is a general rule that, where the Constitution states the essential qualifications of an official, elective or appointive, created by it, they cannot be varied by the Legislature unless authorized by the instrument itself. *Thomas v. Owens*, 4 Md. 189, 223; *Dowling v. Smith*, 9 Md. 242; *Thrift v. Laird*, 125 Md. 55, 70, 93 A. 449; *Cooley Const. Lim.* (8th Ed.) 138, notes 4, 5. Where the Constitution is silent, or where the office is created by statute, it may prescribe the conditions of ineligibility. Note *Ann. Cas. 1915A*, 343.

But where, as in this state, the Constitution has declared so unequivocally the conditions essential to the eligibility to some offices, and has stated with equal precision other conditions which will render a person ineligible for any office created by it, it may be assumed that, when it failed to prescribe any special qualifications as essential to eligibility to constitutional offices, it did not intend any. In this case it imposed instead a condition, and that is senatorial scrutiny and approval. The principle is very clearly stated in *Barker v. People*, 3 Cow. (N. Y.) 686, 15 Am. Dec. 322, a leading case, quoted at length in *People v. McCormick*, 261 Ill. 413, 103 N. E. 1053, *Ann. Cas. 1915A*, 338. And as the statute under consideration here prescribes conditions of eligibility to the office of "Judge of the Peoples Court," which it could not constitutionally prescribe with respect to the office of justice of the peace, it follows that it did not regard the two offices as identical. These provisions of the act, one authorizing the "Judge of the Peoples Court" to make rules governing the practice and procedure in cases before him, others limiting the class of persons

eligible to the office and others forbidding him from practicing law, are wholly inconsistent with the proposition that the office created by the act is that of a justice of the peace. Since the Legislature had no power to establish a new court, these provisions of the act are void. Const. art. 4, sec. 1.

Although the Constitution, article 4, sec. 42, provides that the Governor, by and with the advice and consent of the Senate, shall appoint "such number of Justices of the Peace * * * for the several Election Districts of the counties * * * as are now or may hereafter be prescribed by Law," the act deprives the Governor of that power by limiting him to the appointment of one justice of the peace for three election districts. While the case of *Levin v. Hewes, supra,* held that the Legislature could authorize the appointment of justices of the peace at large, in addition to those appointed for the wards of Baltimore City, it nowhere held that it could take from him the power or discharge him from the duty of appointing such justice for the "several wards" of Baltimore City. If it could validly limit his power to the appointment of one justice for an aggregate of three districts, it could limit the power to one justice for the entire county or abolish the office altogether by failing to provide for the appointment of a justice for any election district in the county. Any such construction would destroy the vitality of the constitutional provision, and in our opinion is unsound. In *Levin v. Hewes, supra,* in overruling an objection to the validity of an act allowing the appointment of justices at large, it was said, "every requirement of the fundamental law is gratified when the act expressly enjoins that a justice shall be appointed from each ward." It is difficult to attribute to that language any meaning other than that the fundamental law does require the appointment of a justice for each ward or each election district, and this is the interpretation given the constitutional provision in *Day v. Sheriff etc.,* 162 Md. 221, 226, 159 A. 602. If it does not mean that, it interprets "several" as meaning "each," and since the act deprives the Governor of the power to

appoint justices of the peace for at least two election districts in Wicomico County, it is to that extent invalid.

There are other provisions of the act which are objectionable, but it is unnecessary to refer to them, for the reason that the defective provisions noted are so essential to the entire plan and purpose of the act, that it cannot stand without them, and it is therefore sufficient to say that the entire act is invalid and void.

It is evident that the Legislature was misled into this situation by attempting to pattern this "Peoples Court" for Salisbury after the "Peoples Court" of Baltimore City, losing sight of the fact that Baltimore City is one entire political unit, unlike any other incorporated town or city in Maryland, all of which are carved out of counties. Baltimore City has a single, not dual, form of government, managed by a mayor and city council, just as Baltimore County, without an incorporated town within its borders, is managed by a board of county commissioners. It has been expressly decided by this court that, outside of Baltimore City, there cannot be a justice of the peace for a town or city unless it constitutes an election district. *Day v. Sheriff etc.*, supra. It offends as much against the Constitution of this State to appoint a justice of the peace for a group of election districts, less than all, in a county, as to appoint one for a town or city in any county (*Day v. Sheriff etc.*, supra), but not for an entire county until the constitutional provision for each district is gratified. *Levin v. Hewes, supra.*

The result of this decision will be to reinstate the law amended or repealed by the acts of 1927 and 1929, and give them such effect as they had prior to the passage of the acts here held invalid. *Bangs v. Fey,* 159 Md. 548, 556, 152 A. 508.

For the reasons stated, the mandamus will issue, and the order of the trial court be affirmed.

*Order affirmed, with costs.*

BOND, C. J., and URNER and PARKE, JJ., concur in the result.