STATE, EX REL. JOHN B. QUINN, APPELLEE, V. FRANK MARSH, SECRETARY OF STATE, APPELLANT.

3 N. W. (2d) 892

FILED MAY 8, 1942.   No. 31419.

*Walter R. Johnson, Attorney General,* and *Robert A. Nelson,* for appellant.

*Loren H. Laughlin, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is a special action authorized by the provisions of section 32-1129, Comp. St. 1929, providing for judicial review of the action of the secretary of state in passing upon certificates of nomination or nomination statements of candidates for public office. The action as originally instituted in the district court was by the state of Nebraska on relation of John B. Quinn, who will be hereinafter referred to as relator, against Frank Marsh, secretary of state, who will be referred to as respondent.

The substantial facts are the following: John B. Quinn, a duly qualified voter affiliated with the Republican party, on the 6th day of November, 1941, filed in the office of the secretary of state an application or nomination statement to have his name printed and carried on the official primary ballots for the primary election to be held throughout the state of Nebraska on August 11, 1942, for the office of state railway commissioner for the regular term commencing in January, 1943, which application was duly accepted by the secretary of state. On November 14, 1941, an objection and protest to the application was duly and regularly filed on the ground that by reason of his age relator was ineligible to become a railway commissioner in the light of the statute (Comp. St. 1929, sec. 75-101, as amended by the laws of 1933 and 1941), which provides that no person is eligible for membership of the railway commission who is less than 30 years of age, whereas relator would not become 30 years of age until July 26, 1943. The substantial facts contained in the objection having been admitted to be true, the secretary of state rejected the application.

From the ruling of the secretary of state the relator filed his action for review in the district court. On review the district court held that section 75-101, Comp. St. 1929, in so far as it provides that state railway commissioners shall be not less than 30 years of age is unconstitutional, null and void, and that such requirement as to age is arbitrary, unreasonable and capricious, and thereby contravenes and conflicts with section 18, art. III, section 1, art II, and section 22, art. I, of the Constitution of Nebraska, 1875, and in consequence ordered forthwith the reinstatement of the application.

From this action of the district court the secretary of state has appealed and as ground for reversal, among others not necessary to be discussed, urges that the decision is contrary to law.

The facts not being in dispute, the only question for determination is the constitutionality of a part of section 75-101, Comp. St. 1929, which part is as follows: "The members of

the state railway commission shall be resident citizens of this state, and qualified voters under the Constitution and laws thereof, and not less than thirty years of age."

The part of section 18, art. III of the Constitution, brought into question here is the following: "The Legislature shall not pass local or special laws in any of the following cases, that is to say: * * * The opening and conducting of any election, or designating the place of voting."

Section 22, art. I of the Constitution, is as follows: "All elections shall be free; and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise."

We are, therefore, called upon here to determine the question of whether or not the provision of section 75-101, Comp. St. 1929, which prohibits persons under the age of 30 years from holding the office of railway commissioner is legislation which contravenes one or both of the quoted constitutional provisions.

To begin with it appears to be conceded, and it cannot be denied, that where the Constitution creates an office and enumerates the qualifications for eligibility to the office the legislature is without power to impose other conditions of eligibility. *Jansky v. Baldwin,* 120 Kan. 332, 243 Pac. 302; *Humphreys v. Walls,* 169 Md. 292, 181 Atl. 735; Mechem, Public Officers, p. 27 *et seq.*

It appears appropriate then to inquire into the question of whether or not section 20, art. IV of the Constitution, which is the provision creating the offices of state railway commissioner, and which became a part of the Constitution by amendment in 1906, enumerates any qualifications for eligibility. The section is as follows: "There shall be a state railway commission, consisting of three members, who shall be first elected at the general election in 1906, whose terms of office, except those chosen at the first election under this provision, shall be six years, and whose compensation shall be fixed by the legislature. Of the three commissioners first elected, the one receiving the highest number of votes, shall hold his office for six years, the next highest four years, and

the lowest two years. The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision."

It will be observed that there are no provisions pertaining to eligibility. However, it is the contention of the relator that, the Constitution having imposed no conditions of eligibility, no power existed in the legislature to impose any such conditions, and, even assuming the power to impose conditions, that those imposed are arbitrary, unreasonable and capricious.

The relator urges the following: (1) That the statute is violative of the true intent of the Constitution and that it exceeds the general express and implied constitutional purpose; (2) that where the departments of government are definitely separated as are those of Nebraska, the legislature may not establish arbitrary exclusions from office nor annex qualifications to constitutional offices of the executive department where the Constitution has not established exclusions or annexed qualifications; (3) that the courts will not permit one class of voters to be given more power in governmental affairs than another class; (4) that in view of the fact that since section 2, art. IV, and section 7, art. V, of the Constitution contain specific prohibitions on the question of age of certain constitutional officers, this must be conclusively presumed to be a bar to legislative declaration of conditions of eligibility based upon any age other than that of an elector; (5) that the legislative limitation in question is a legislative encroachment upon the executive department of government.

No case like or of a similar character to this one has ever been before this court, and but few have been before any of the courts. One approaching it as closely as any to facts from another jurisdiction is the case of *Attorney General v. O'Neill*, 280 Mich. 649, 274 N. W. 445. In that case the right of O'Neill to hold the office of circuit judge was

brought into question. The Constitution of Michigan contained no exclusionary provisions against the holding of judicial office. The statutes, however, did contain certain exclusionary provisions. They provided that no person should be eligible for election or appointment to the office of circuit judge unless he had been duly admitted and licensed as an attorney and counselor in all of the courts of the state for a period of at least eight years. O'Neill was admitted to the bar on motion in the circuit court for the county of Saginaw, but did not file with the clerk of the supreme court the necessary affidavit to entitle him to practice in all of the other courts of the state.

In that case three opinions were written, all arriving at the ultimate conclusion that O'Neill was entitled to hold the office of circuit judge, but each arrived at its conclusion on an entirely different basis. The three opinions are mentioned for the reason that in them are collected references to most, if not all, of the reported cases having a direct bearing on the question presented here.

In the majority opinion numerous cases were reviewed which resulted in the following pronouncement: "The conclusion is inevitable that under the division of powers in the Michigan Constitution the judiciary is an independent department of the State government and the legislature has no power to annex qualifications for circuit judges not found in the Constitution." It will be noted that the majority opinion turned on a question of division of powers of government.

In the second opinion, after review and quotation from numerous decisions, the conclusion was arrived at that where the Constitution imposed no restriction as to eligibility of circuit judges the legislature was without power to do so.

In the third it was concluded that O'Neill was qualified to hold the office of circuit judge since he had actually been admitted to practice law in the state for more than eight years, and that the requirement that he file affidavit with the clerk of the supreme court should be held to be merely directory.

In this opinion it was concluded that, where the Constitution fails to prescribe qualifications for public office, the legislature had the right to prescribe the conditions upon which the right should be conferred. The following from Mechem, Public Officers, p. 22, sec. 66, was quoted with approval: "Where, however, the Constitution does not prescribe the qualifications (for public office), it is the province and the right of the legislature to declare upon what terms and subject to what conditions the right shall be conferred."

In the opinion in the case of *Humphreys v. Walls, supra,* cited by relator, the following is found: "It is a general rule that, where the Constitution states the essential qualifications of an official, elective or appointive, created by it, they cannot be varied by the legislature unless authorized by the instrument itself;" also the following: "But where, as in this state, the Constitution has declared so unequivocally the conditions essential to the eligibility to some offices, and has stated with equal precision other conditions which will render a person ineligible for any office created by it, it may be assumed that, when it failed to prescribe any special qualifications as essential to eligibility to constitutional offices, it did not intend any." With reference to the asserted assumption that a constitutional failure to prescribe special qualifications indicates an intention that there should be none, a reading of the opinion discloses that this is *dicta,* since the court was dealing with a situation where a constitutional restriction had been imposed to which the legislature sought to add other restrictions. The constitutional restriction was senatorial scrutiny and approval.

From the decisions of this court relator cites *State v. Bartley,* 41 Neb. 277, 59 N. W. 907, and *State v. Moorhead,* 99 Neb. 527, 156 N. W. 1067. In the opinions in these cases the following is found: "An act which violates the true meaning and intent of the Constitution and is an evasion of its general express or plainly implied purpose is as clearly void as if in express terms prohibited."

From this and the other cases cited it is argued that, from the fact that the Constitution contains no provision for

eligibility of railway commissioners to hold office, it was the implied purpose that there should be none imposed by the legislature.

On the other hand, it is the contention of the respondent that in the absence of restriction, and in the light of the silence of the Constitution in this regard, the legislature has (1) the power to impose conditions of eligibility upon railway commissioners to hold office which are not unreasonable, and (2) that the fixing of a minimum age limit of 30 years is not unreasonable.

In support of respondent's contention with regard to legislative power, our attention is directed to a number of decisions.

In the opinion in *Jansky v. Baldwin, supra,* the following statements are found:

"This section of the Constitution is silent as to requirements of eligibility. It is the rule that when the Constitution of a state creates an office, and names the requirements of eligibility therefor, the legislature has no authority to make additional requirements, nor to provide that one may hold the office who does not have the constitutional requirements. * * *

"Our Constitution (art. 5, secs. 2, 5 and 6) has placed certain restrictions upon the right of suffrage and the right to hold office. So long as a legislative act does not infringe upon those restrictions, it cannot be said to be unconstitutional. * * * Suitable educational qualifications and previous experience of such officers as county superintendent of public instruction change with changed conditions of the people. The Constitution, although it provided such office, did not deal with the subject of the specific fitness of the person who should be elected to such office, leaving that to the legislature to be fixed and modified as educational needs might require."

In *Darrow v. The People,* 8 Colo. 417, 8 Pac. 661, the Colorado court stated the following, which is in part a quotation from *Ohio v. Covington,* 29 Ohio St. 102: "We do not believe that the framers of the Constitution, by this provision, intended to say that the right to vote should be the sole and

exclusive test of eligibility to all civil offices, except as otherwise provided in the instrument itself; that no additional qualifications should ever be demanded, and no other disqualifications should be imposed. If, as has been well said, they 'had intended to take away from the legislature the power to name disqualifications for office, other than the one named in the Constitution, it would not have been left to the very doubtful implication which is claimed from the provision under consideration.'"

In *Ohio v. Covington, supra,* it is stated: "Indeed, the true rule for ascertaining the powers of the legislature is to assume its power under the general grant ample for any enactment within the scope of legislation, unless restrained by the terms or the reason of some express inhibition."

In *State v. McAllister,* 38 W. Va. 485, 18 S. E. 770, it is stated: "Defendants in error agree that because this section forbids any persons except qualified electors to hold office, by just implication, the converse of the proposition is also included in the meaning of the section; that is to say, that all electors are duly qualified to hold office. Such reasoning is very fallacious. This provision was simply intended to limit the number from whom the various officers of this state might be chosen to those having a voice in the selection of such officers, and not in any sense intended to determine the qualifications necessary to properly discharge the duties of any office."

As has already been pointed out, no similar case has been previously before this court, but very early in the history of the state the court announced a policy and certain principles to be applied in the determination of the legislative prerogative and power when weighed against claimed constitutional limitation and inhibition which policy and principles have been steadfastly adhered to.

In *Hallenbeck v. Hahn,* 2 Neb. 377, it was stated:

"The Constitution of this state confers plenary legislative power upon the general assembly; and, if an act is within the legitimate exercise of that power, it is valid, unless some

express restriction or limitation can be found in the Constitution itself."

(Page 397): "This doctrine is elementary, is cardinal, and arises out of the very nature of our form of government. With us, sovereignty resides with the people. Were they acting as a whole for themselves, there can be no doubt but this, or any other law that should receive a majority sanction, would be conclusive. But, parcelling out the exercise of their sovereign power to the three departments of government,—the legislative, the executive, and the judicial, —to the first has been committed, except what has been abandoned to the congress of the United States, the exercise of the whole sovereign law-making power as completely and absolutely as possessed by the people, subject only to such limitations as the people may have chosen to impose. These limitations are set out in the state Constitution."

In the recent case of *Swanson v. State*, 132 Neb. 82, 271 N. W. 264, it is stated: "The principles above enunciated have long been approved in this jurisdiction, and we are fully committed to the doctrine that the Constitution of this state is not a grant but a restriction on legislative power, and that the legislature may legislate upon any subject not inhibited by the Constitution." Other cases supporting this doctrine are *State v. Lancaster County*, 4 Neb. 537; *State v. Dodge County*, 8 Neb. 124; *Shaw v. State*, 17 Neb. 334, 22 N. W. 772; *Magneau v. Fremont*, 30 Neb. 843, 47 N. W. 280.

After examination and analysis of the pertinent constitutional provisions and the decisions and authorities, and in the light of the established doctrine of this state pertaining to the power of the legislature to enact laws, we hold:

That section 75-101, Comp. St. 1929, is not violative of the true express or implied intent and purpose of the Constitution.

That the section does not establish exclusions from constitutional office, nor annex qualifications expressly or impliedly prohibited by the Constitution.

That the section does not have the effect of granting to

one class of voters powers in governmental affairs in excess of those granted to others.

That no presumption arises from section 2, art. IV, and section 7, art. V, of the Constitution, of an intent that the legislature should be without power to require that railway commissioners should possess reasonable qualifications as a condition of eligibility to hold office.

That the limitation of section 75-101 is not an encroachment by the legislative upon the executive department of government.

We are now confronted with a determination of the question of whether or not the legislative restriction contained in section 75-101, Comp. St. 1929, is unreasonable. This court is not committed to any doctrine on the question of whether reasonableness should be a test of legislative restriction on the right to hold constitutional public office, nor to a method or procedure for the determination of the question of reasonableness if it shall become an issuable matter.

The courts of Wisconsin have determined that the question of reasonableness is a proper subject of inquiry and judicial review on the theory that legislative restrictions on the right to hold constitutional office are matters coming within the police power. In the case of *State v. Phelps*, 144 Wis. 1, 128 N. W. 1041, it was held: "It is further elementary that, the extent to which the legislature may go in the field of police power, is primarily a matter for its judgment. As to the case in hand, the same as others, it could not properly go beyond reasonable regulation. However, what is and what is not reasonable, is primarily for legislative judgment, subject to judicial review. Such review does not have to do with expediency. It only deals with whether the interference, from the standpoint of a legitimate purpose, can stand the test of reasonableness, all fair doubts being resolved in favor of the proper exercise of lawmaking power."

Whether it be, as in Wisconsin, under the police power, or under the general power of the court, to review the acts of the legislature in a proper action instituted for that purpose in pursuance of the division of the sovereign powers of

the state government, it appears clear that the reasonableness of a legislative restriction upon eligibility to hold a constitutionally created office is a proper subject of judicial review, and accordingly that becomes the considered determination of this court.

As an aid in determining the reasonableness of the restriction in question, few, if any, extraneous facts are presented. In truth, none could have been presented. We must resort, therefore, to an examination of the constitutional provision creating the railway commission and prescribing its duties and functions (art. IV, sec. 20), and the statutes adopted in pursuance thereof (Comp. St. 1929, ch. 75, with amendments thereto).

In pursuance of and within the power conferred by this provision the legislature, in a full chapter (chapter 75, *supra*), occupying 20 pages of the statutes not including its amendments, has defined the many duties of the railway commission. Among the many important duties this commission is called upon to perform are the following: To regulate rates and services of all common carriers, to investigate violations of law by common carriers, to conduct hearings, to enter orders, to enforce provisions relating to sale of liquid fuel tractor engines in the state, to regulate rates and service and to have general control over pipe lines for oil and gas, to regulate the issuance of stocks and bonds of common carriers, to find the valuation of public service corporations in the state. From an examination of this constitutional and these statutory provisions, it is safe to say that no other agency of the state subordinate to the sovereign government itself has more broad, far-reaching and important powers and functions than does the state railway commission.

In the light of the common knowledge that the proper understanding, determination, administration, execution and control of big problems and multifarious activities require knowledge and experience, and that while age is not the sole factor in the acquisition of knowledge and experience it is an important one, can this court say that the requirement

that an elector shall have attained the age of 30 years before he shall be eligible to hold the office of state railway commissioner is unreasonable? We conclude that the question requires a negative answer.

From this record we do not know anything about the qualities or individual qualifications of the relator to perform the duties of a railway commissioner. It may be that his personal qualifications are such as would permit him to perform the duties of the office with credit and dispatch, but that is not a matter for proper inquiry here. The only question here is the reasonableness of the restriction in section 75-101, Comp. St. 1929, and it is held that in the light of the importance of the functions of the office as disclosed by the Constitution and the statutes the restriction is not unreasonable.

It is, therefore, the opinion of this court that the decision and judgment of the district court should be and are reversed, and the petition of relator is dismissed.

REVERSED AND DISMISSED.