REQUESTED BY: Senator Martin F. Kahle Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Kahle:
By letter dated February 11, 1982, you requested an opinion from this office as to the constitutionality of various provisions of LB 882, in particular section 2 which requires that both the Auditor and Deputy Auditor be certified public accountants and holders of current certificates to practice.
In State ex rel. Quinn v. Marsh, 141 Neb. 436,3 N.W.2d 892 (1942), an applicant under the age of 30 sought to have his name printed on the ballot for the constitutional office of State Railway Commissioner. A statute required that commissioners be 30 years of age and, therefore, the Secretary of State rejected the application. This was challenged in the courts, the district court holding that the statute was unconstitutional. The Supreme Court, however, reversed. Although the court accepted the proposition `that where the Constitution creates an office and enumerates the qualifications for eligibility to the office the legislature is without power to impose other conditions of eligibility citations omitted', id. at 439,3 N.W.2d at 894, it could not agree with the applicant's argument that where the Constitution contains no provision for eligibility for an office, it implies that there should be none imposed by the Legislature, stating: `We are fully committed to the doctrine that the Constitution of this state is not a grant but a restriction on legislative power, and that the legislature may legislate upon any subject not inhibited by the Constitution.' Id. at 445, 3 N.W.2d at 897, quotingSwanson v. State, 132 Neb. 82, 271 N.W. 264. The court then went on to consider the reasonableness of the age limitation.
Another case standing for the proposition that where the Constitution is silent on a subject, the Legislature has the power to impose reasonable qualifications as a condition of eligibility to hold office is State ex rel. Landis v.Ward, 158 So. 273 (Fla. 1934). This case is mentioned as it permitted the imposition of professional licensing requirements on a constitutional officer. The court upheld the statute which required county surveyors, a constitutional office, to be registered with the State Board of Engineering Examiners, as a reasonable means of insuring that the holder of the office was `competent under the law to personally perform the acts that must be done by an incumbent of it in order to enable him to discharge the official duties that the law requires.' Id. at 275.
As no eligibility requirements for the Auditor of Public Accounts are set forth in the Constitution, it would, in our opinion, be permissible for the Legislature to impose reasonable qualifications for eligibility for that office. The requirement that the Auditor be a certified public accountant would appear to be such. `Auditor' is defined in Black's Law Dictionary, 4th Ed. (1968) as `A public officer whose function is to examine and pass upon the accounts and vouchers of officers who have received and expended public money by lawful authority. An officer who examines accounts and verifies the accuracy of the statements therein.' This state has been fit to oversee the professional qualifications of those who examine books, records and financial statements of others so as to give their opinion of whether the financial statements accurately portray the financial condition of the one being examined. Neb.Rev.Stat. § 1-106,et seq. (Reissue 1977). It would seem reasonable to require the Auditor of Public Accounts to meet these same requirements.
As a matter of statutory consistency, you may wish to change the last sentence of section 2 to require the Auditor and Deputy Auditor to be holders of current permits to practice, if that is what was intended. Under Nebraska law there are both certificates and permits and the use of the term `certificate' in section 2 may cause some confusion.
You have also requested the opinion of this office on the constitutionality of the bill's other provisions.
There are many provisions that are constitutionally questionable in several respects. First, the bill includes provisions which clarify the definition of public accountancy, impose professional licensing requirements on the office of Auditor of Public Accounts and his deputy, require the minimum standards for accounting reports prepared for political subdivisions to be consistent with sound accounting principles as determined by the State Board of Public Accountancy, and establish certain personnel policies and practices for a constitutional office. This menagerie of topics is arguably in violation of Article III, Section 14, of the Constitution of this state prohibiting bills from containing more than one subject. However, this section of the Constitution has been liberally construed in favor of the constitutionality of legislation and as the provisions are all tied to the Auditor of Public Accounts, it is likely that the bill will be upheld in that respect.
Another concern is that the effect of amendments contained in section 1 and section 2 of the bill which require the Auditor to be a certified public accountant and classify the practice of accounting by the Auditor as the profession of public accountancy, would be to subject the Auditor of Public Accounts to the revocation of his certificate and permit to practice for any of the grounds listed in Neb.Rev.Stat. § 1-137 (Reissue 1977). As section 2 of the bill requires the Auditor of Public Accounts to be a certified public accountant and a holder of a current `certificate' (permit ?) to practice, this would open up the possibility that the Auditor could be disqualified from holding his office during the term thereof. If this construction were adopted, the legislation would be violative of Article IV, Section 5, of the Nebraska Constitution which has been interpreted to provide that the only means for removing the holder of a constitutional office during his term in office is by impeachment. Fitzgerald v. Kuppinger,163 Neb. 286, 79 N.W.2d 547 (1956). It is our opinion, however, that the bill will not be considered constitutionally defective for this reason. Legislation carries with it a presumption of constitutionality and, if possible, will be construed in a way to negative any constitutional infirmity. As a result, a court confronted with the problem would most likely determine that the requirements that the Auditor be a certified public accountant and holder of a current certificate or permit to practice are for eligibility purposes only and a revocation of either during his term of office would not result in the Auditor having to vacate his position until the end of his term.
The provision which causes us the greatest problem is section 4 which requires the Auditor of Public Accounts to establish grievance procedures for his employees. The proposed legislation does not go into detail in regard to the grievance procedures to be offered to employees. Whether the finding of the hearing officer presiding over the grievance proceeding is to be binding upon the Auditor or merely a recommendation is also not specified. As a result of this lack of specificity, we have not attempted to consider the question of whether the Legislature has gone too far in attempting to regulate the internal workings of a constitutional office.
However, it does appear that the establishment of grievance procedures for employees in the office of the Auditor of Public Accounts does run afoul of Article III, Section 18, of our Constitution which prohibits the enactment of special laws where general laws can be made applicable. LB 882 has only conferred the benefit of grievance procedures on employees of one constitutional officer. Although there is no prohibition on class legislation, the classification must be reasonable. It `must rest upon real differences in situation and circumstances surrounding members of the class relative to the subject of the legislation which renders appropriate its enactment.' State ex rel.Douglas v. Marsh, 207 Neb. 598 at 608, 300 N.W.2d 181 at 187 (1981). Although the creation of a class within the office of the Auditor of Public Accounts may be appropriate for some purposes, we fail to see a rational basis for the distinction being drawn between employees of the Auditor's office and employees of other constitutional offices in relation to grievance procedures. While there may be a basis for the distinction between state employees who are in a constitutional office and those who are not (neither Merit System nor Personnel rules are applicable to the employees of constitutional officers, Attorney General Opinion No. 129 (1981).), a further division in respect to employment rights would not seem warranted.
Although to some extent the Legislature is free to identify areas needing the most attention and confine its actions to those areas (Parker v. Roth, 202 Neb. 850,278 N.W.2d 106 (1979), cert. denied, 444 U.S. 920), `they cannot take what may be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered fractions of the original unit as two classes, and enact different rules for the government of each.'State ex rel. Taylor v. Hall, 129 Neb. 669 at 683,262 N.W. 835 at 842 (1935), quoting from State v. Julow,129 Mo. 153, 31 S.W. 781.
We believe that if the question were raised a court would likely find the singling out of employees of the Auditor's office for additional employment rights to be unconstitutional.
Very truly yours,
PAUL L. DOUGLAS Attorney General
Mark D. Starr Assistant Attorney General