COLLIER *et al.*, commissioners, *v.* ELLIOTT *et al.*

1. There is no law authorizing or empowering the commissioners.
   of roads and revenues of Fulton county to establish a board
   of "county police," charged with the duty of making arrests,
   or otherwise enforcing the criminal laws of this State.
2. The record in the present case disclosing with certainty that
   the "county police" were not appointed for the purpose of
   inspecting roads and bridges, but that their duties, under the
   rules and regulations prescribed for their government, were
   exclusively those of police officers proper, the court was right
   in enjoining the county commissioners from paying out of the
   county funds the persons so appointed for their services as
   policemen.

Argued February 11,—Decided March 4, 1897.

Injunction.   Before Judge Lumpkin.   Fulton county.
January 5, 1897.

*Luther Z. Rosser*, for plaintiffs in error.
*Lewis W. Thomas*, contra.

LUMPKIN, Presiding Justice.

The commissioners of roads and revenues of Fulton
county, some years ago, passed an order by which they un-
dertook to establish a board of "county police," and to pre-
scribe rules and regulations for the government of this force.
It was made the duty of the men composing it "to arrest
and make cases against all parties in Fulton county whom
they know, or may have evidence against, for the violation
of any State law."   These men were furnished with horses
and pistols, and provided with quarters at the "Fulton
county barracks."   Not one word in the order, or in the
rules and regulations above mentioned, made it the duty of
the members of this organization to inspect the public roads

.and bridges of the county, or to make any report as to their condition.

After the lapse of some time, the county board passed another order reciting that, at a previous session, it had been determined that "in order that the public roads and bridges might have proper oversight and inspection, and that this board might have constant knowledge of the condition of the roads and bridges of the county, that the public interest would be advanced by the appointment of inspectors who should be charged with the duty of regularly inspecting all the roads and bridges in the county, and making reports monthly, or oftener if required by this board, of the condition of said roads and bridges." This order then proceeded to recite that it was deemed advisable to employ these men as the "road inspectors" of the county, at specified salaries; and further, that at the term when the original order was passed, it had by oversight designated a named person "as chief of county police, when in fact the position to which he was appointed by this board, and for which he had been paid out of the county funds, was that of inspector of roads and bridges, his appointees . . being assistant inspectors of roads and bridges, and having been paid accordingly"; and it was thereupon ordered that the original order be amended, and that the minutes of the board be "corrected to conform to the foregoing recitals." Then followed the appointment of a "chief inspector of roads and bridges," and of certain persons as "assistant inspectors of roads and bridges," at specified salaries. But notwithstanding the fact that the commissioners thus changed the official designation of the persons so appointed, the duties which the preamble to this order indicated would be expected from the chief and assistant "inspectors" as to examining the roads and bridges of the county, and making reports thereon, were not defined, and the order contained nothing in terms directing them to perform any such duties.

Some time later the board of commissioners, evidently

overlooking the terms of the order last above referred to, passed yet another order providing for "the appointment of five additional *county policemen*, to serve at the same compensation now received by the others, and under the same rules," still failing to impose upon these appointees any duty as to roads and bridges.

The foregoing is a fair summary of the action taken by the county commissioners with reference to the appointment of these officials and the services they were expected to render. The evidence as a whole shows beyond the shadow of doubt that they were really employed and paid for their services as police officers, and that any duty of looking after the roads and bridges of the county, if contemplated at all, was merely incidental to the purpose actually in view.

An equitable petition was presented to the judge of the superior court, to restrain the county commissioners from paying out of the county funds the persons appointed in the manner above shown, for their services as policemen. The judge granted the injunction, and was unquestionably right in so doing. There is no law authorizing or empowering the commissioners of roads and revenues of Fulton county, or any other county, to establish such a board of "county police." Money belonging to the public cannot be paid out for any purpose without express authority of law. There being no law for the appointment of these officers to serve as policemen, and no law to authorize their compensation from the county treasury, there can be no doubt that the entire system was unwarranted and illegal.

It may be that the county of Fulton has a need for the services of just such officers; but however great such a need may be, it cannot be met unless the General Assembly, if it can constitutionally do so, shall by suitable enactment make provision for the organization and maintenance of a police force of this kind.

*Judgment affirmed.    All the Justices concurring.*