## FLUKER *et al. v.* CITY OF UNION POINT *et al.*

1. The mayor and council of the City of Union Point have no authority under its charter, by ordinance, to create the office of "night watchman" of said city, and to provide that the person holding such office shall serve until the ordinance is repealed, "shall go on duty at 6 p. m. and remain till 6 a. m.," and "shall protect the persons and property of said city," and, "to that end, . . shall apprehend and arrest any persons violating the laws and ordinances of said city," and that he shall be paid by the city a stated sum per night as his salary.
2. Consequently a court of equity will, at the instance of citizens and taxpayers of the city, prevent, by injunction, the payment of such salary by the city to the incumbent of such office.

Submitted January 18,—Decided May 12, 1909.

Petition for injunction. Before Judge Lewis. Greene superior court. November 20, 1908.

*Park & Park,* for plaintiffs. *S. H. Sibley,* for defendants.

FISH, C. J. Only one point is presented for adjudication by the record in this case, and that is whether the City of Union Point can, under its charter, elect a night marshal, or watchman, and pay him a salary for his services from its treasury. The charter of the city, in section 7, provides that the "mayor and councilmen" of such city "have the power, should they see fit to do so, to elect a mayor pro tem., a clerk of council, a city treasurer, . . and a city marshal, to hold their offices for the term of one year, or until removed by the mayor and council, and to receive such compensation, if any, as may be fixed by the mayor and council. . . That mayor and council may also appoint special police for special emergencies." Acts 1904, p. 678. Section 14 of the charter provides: "That the said mayor and council shall have full power and authority to enact and enforce all ordinances, by-laws, rules and regulations necessary for the good government of said city; and to protect . . and promote peace and good order in said city." The mayor and council enacted the following ordinance: "In order to protect and promote peace and good order in the City of Union Point, a night watchman is hereby employed for said City of Union Point at a salary of $1.00 per night. Said night watchman shall go on duty at 6 p. m. and remain till 6 a. m. Said night watchman shall serve until this ordinance is repealed. Said night watchman shall protect the persons and property of said city; to that end he shall apprehend and arrest any person

violating the laws and ordinances of said City of Union Point."
In pursuance of this ordinance, at a regular council meeting,
"W. H. Gentry was elected night watchman, his salary to be $1.00
per night." Plaintiffs in error contend, that as a municipal cor-
poration has no power except that expressly or by necessary impli-
cation conferred upon it in its charter, and as the charter of Union
Point conferred upon it authority to elect one marshal and to pay
him a salary, the power of the city was restricted to the election
of one marshal and to the payment of his salary, except in case
of special emergencies, when authority was granted to appoint
special police. The defendants in error contend, that, under the
general authority conferred by the charter upon the mayor and
council to enact and enforce all ordinances and regulations neces-
sary for good government of the city and to promote and pro-
tect the peace and good order thereof, the city was authorized, un-
der its charter, to employ a night watchman, at one dollar per
night, to protect the persons and property of the city.

1. In our opinion, the contention of the plaintiffs in error
should prevail. Considering the ordinance as passed by the mayor
and council and their action thereunder, we do not think that this
is a case where merely an individual was employed to perform cer-
tain services for a specified time for the protection of the city and
its citizens. The ordinance provided for the employment of a
night watchman at a given salary, who was to go on duty at 6
p. m. and remain on duty until 6 a. m., and who was to serve until
the ordinance should be repealed, and, for the purpose of protect-
ting the persons and property of the city, the duty was imposed
upon him of apprehending and arresting all persons violating the
laws and ordinances of the city; and to fill the position so created,
Gentry "was elected night watchman, his salary to be $1.00 per
night." Usually mere employees of a city are not elected and
they do not receive salaries. Moreover, the night watchman pro-
vided for by the ordinance, in protecting the persons and property
of the city, was to perform the duties of a regular marshal or po-
liceman; for it was explicitly made his duty, in this respect, to
arrest all persons violating the laws and ordinances of the city.
The fact that the ordinance designated him a night watchman and
provided that he should be "employed" does not keep him from be-
ing a police officer. See, in this connection, *Collier* v. *Elliott*, 100

*Ga.* 363 (28 S. E. 117). His duties, as prescribed by the ordinance, make him a night marshal or policeman; and we think it clear that the city, under its charter, has no authority to create such an office, fill it by election, and pay a salary to the incumbent thereof from the city treasury. It is clear that the action of the city authorities in this matter was not authorized by the provision in section 7 of the charter, authorizing them to "appoint special police for special emergencies." On the contrary, the presence of this provision in the charter indicates that it is only "in special emergencies" that "special police" can be employed. It seems apparent that the purpose of this section of the ordinance, in so far as the power of the mayor and council to elect or appoint police officers is concerned, was to deal exhaustively with the subject; for it provides only for the election of a city marshal, and then limits the power of the mayor and council, as to the employment of policemen other than the city marshal, to the authority to "appoint special police for special emergencies." There is nothing whatever in the ordinance in question which even suggests the existence of any special emergency requiring the employment of a night policeman. On the contrary, the ordinance indicates that the night watchman was to be elected and employed because, in the opinion of the mayor and council, it was necessary for the city to have a policeman on duty by night as well as one on duty by day, not to meet a special, temporary emergency, but regularly, night after night, and for an indefinite period of time.

2. It being well established that taxpayers may enjoin municipal corporations and their officers from making an unauthorized appropriation of the corporate funds or an illegal disposition of the corporate property, it follows from the foregoing that the court below erred in refusing to grant the injunction prayed for.

*Judgment reversed. All the Justices concur.*