ROBERT B. KIMBLE *v.* ALPHONSE F. BENDER

[No. 14, January Term, 1938.]

610

*Decided January 15th, 1938.*

The cause was argued before URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*William C. Walsh* and *George Henderson,* with whom was *Charles Z. Heskett* on the brief, for the appellant.

*Julius E. Schindler* and *George W. Legge,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The petitioner on this record obtained a writ of mandamus commanding one Robert B. Kimble to vacate the public office of justice of the peace at large for Allegany County. At the time of the writ, Kimble was engaged in the performance of the duties of this office by virtue of an appointment by the Governor, by and with the advice and consent of the Senate, pursuant to the provisions of Chapter 153 of the First Extra Session of 1936 of the General Assembly of Maryland. The statute is a local act for Allegany County, and repealed and re-enacted with amendments the subtitle "Justices of the Peace and Constables" of article 1 of the Code of Public Local Laws of Maryland, entitled "Allegany County."

At the time of the passage of this act the respondent Kimble was a member of the General Assembly of Maryland, as he was then the qualified Senator from Allegany County. The principal question is whether or not the respondent is ineligible to be a justice of the peace at large for Allegany County either by reason of the mandate of article 35 of the Declaration of Rights, "That no person shall hold, at the same time, more than one office of profit, created by the Constitution or Laws of this State," or because of the provision of section 17 of article 3 of the Constitution of Maryland that: "No Senator or Delegate, after qualifying as such, notwithstanding he may thereafter resign, shall during the whole period of time for which he was elected be eligible to any office which shall have been created, or the salary or profits of which shall have been increased, during such term."

Before proceeding to a consideration of the capacity of the respondent, the objections to the constitutionality

of the act, obviously, should be first decided. These objections rest on, three points. The first is that the title is defective when measured by the requirements of section 29 of article 3 of the Constitution, of Maryland. The petitioner urged this contention in the *nisi prius* court, but did not argue it on his brief. It is enough to say that, within the decisions of this court in analogous cases, the title is sufficient to put any one interested on notice of the subject-matter of the contemplated legislation and did not mislead as to the main object of the statute. *Levin v. Hewes*, 118 Md. 624, 86 A. 233.

The second objection to the validity of the act is that it omitted a provision expressly conferring upon the County Commissioners of Allegany County the power to levy money to pay the salaries of the justices of the peace at large. The compensation of these justices is an annual salary of a fixed amount, which is payable in equal monthly installments. The language of the enactment clearly shows the intention of the Legislature that these public officials are to be paid their respective and fixed salaries. It is also manifest that the County Commissioners of Allegany County contemplated that the payment of these salaries is the obligation of the County Commissioners. So it was not necessary expressly to include a direct authorization to pay, because the general law provides that the county commissioners of every county "shall levy all needful taxes * * * and pay and discharge all claims on or against the county which have been expressly or impliedly ·authorized by law." Code, art. 25, sec. 8; *Eyler v. Allegany County*, 49 Md. 257, 269; , *School Commissioners v. Allegany County*, 20 Md. 449, 458. See *Chaney v. Anne Arundel County*, 119 Md. 385, 388, 389, 86 A. 1039; Code Pub. Loc. Laws (Flack) 1930, art. 1, sec. 106. No more than this general power to discharge its lawful obligations is necessary to impose upon the county commissioners the duty to pay the salaries created by the act.

The third and final objection on the point of its legality is that the act violates the terms of section 42 of arti-

cle 4 of the Constitution, which, so far as it need be quoted, provides: "The Governor, by and with the advice and consent of the Senate, shall appoint such number of Justices of the Peace * * * for the several Election Districts of the counties and wards of the City of Baltimore, as are now or may hereafter be prescribed by Law; * * * and shall have such jurisdiction, duties and compensation, subject to such right of appeal in all cases from the judgment of Justices of the Peace, as hath been heretofore exercised, or shall be hereafter prescribed by Law."

A violation of this section is contended by the petitioner to exist, on the theory that the act confines the jurisdiction of a justice of the peace at large to the limits of certain municipalities, within the territorial limits of Allegany County, and thus ignores the constitutional provision that the appointment must be made with reference to the political unit or county and its election districts. It is asserted that this forbidden effect is produced by the requirement that two of this class of justices shall sit in the municipality of Cumberland, two in the town of Frostburg, and one in each of five other municipalities. The court's attention is further directed to the fact that the municipality of Cumberland comprises six election districts, of Frostburg, five election districts, and of Lonaconing, two election districts.

The error of the position of the petitioner is in the assumption that the statute limits the jurisdiction of a justice of the peace at large to the particular municipality in which he is bound to sit for the trial of cases. Such a construction is not warranted by the language of the statute. The jurisdiction of the class of justices under consideration is coextensive with the county, and the statutory obligation that a certain number shall sit for the trial of cases in specified municipalities is not in limitation of that jurisdiction but in assurance that, at designated and advantageously located places, sufficient of the additional justices at large will, in the exercise

of their full magisterial jurisdiction in civil and criminal matters, be in session to facilitate the more convenient and prompt despatch of whatever function lies within the compass of their authority.

Thus the exaction imposed upon the justices of the peace at large to preside in magistracy at a particular seat is an administrative regulation in the public interest, to make certain that, wherever else it may be casually employed, the county wide jurisdiction granted shall be constantly exercised at the specific places which the statute designates. Hence the provisions do not limit the jurisdiction of these justices to certain election districts, nor to particular municipal corporations.

The act provides for the appointment of two classes of justices of the peace. The first class is composed of those who shall be duly appointed in such number, in and for each election district of Allegany County, as shall now or may hereafter be provided by law; and the second class includes the nine additional justices of the peace, who are to be appointed and known as justices of the peace at large for Allegany County. Acts of 1936, 1st Ex. Sess. ch. 153, secs. 179, 179-A. The creation of these two classes, their selection, jurisdiction, duties, and compensation, are well within the sanction of the decisions of this court. *Levin v. Hewes,* 118 Md. 624, 86 A. 233; *Day v. Sheriff of Montgomery County,* 162 Md. 221, 159 A. 602; *Humphreys v. Walls,* 169 Md. 292, 181 A. 735; *Quenstedt v. Wilson,* 173 Md. 11, 194 A. 354.

The remaining questions do not go to the validity of the act, but concern the capacity of the respondent, whose legal competency to hold the office of justice of the peace at large is assailed on two constitutional grounds. The first is that article 35 of the Declaration of Rights declares: "That no person shall hold, at the same time, more than one office of profit, created by the Constitution or Laws of this State." It will be found on examination that the declaration invoked is not applicable. Section 11 of article 3 of the Constitution of Maryland qualifies the quoted provision of the Declaration of Rights

by the mandate that: "No person holding any civil office of profit or trust under this State, except Justices of the Peace, shall be eligible as Senator or Delegate." These concrete rules of the Declaration of Rights and of the Constitution should be read and construed together so as to give harmonious effect to both instruments. In this construction, it should be kept in mind that the provision of the Declaration of Rights is general with respect to its subject-matter, and that of the Constitution is directed to the eligibility of members of the General Assembly of Maryland, and, therefore, is particular in the subject-matter to which it is addressed. So, no conflict arises if, in the construction of the article and the section under consideration, effect be given to the particular and subsequent provision of the Constitution which exempts members of the General Assembly from ineligibility, should they happen to be at the same time justices of the peace, rather than to the general provisions of the Declaration of Rights. When so regarded, the better view is that holding at the same time the office of senator and the office of justice of the peace does not make the person so situated ineligible for either office. See *Truitt v. Collins*, 122 Md. 526, 530-532, 89 A. 850; *Lilly v. Jones*, 158 Md. 260, 265, 148 A. 434; *Pruitt v. Glen Rose Ind. School Dist.* 126 Tex. 45, 84 S. W. (2nd) 1004; 1 Cooley's Const. Lim. (8th ed.) pp. 127-130.

The second ground upon which the capacity of the respondent to become a justice of the peace at large is disputed is based upon section 17 of article 3 of the Constitution.

Since the respondent was a member of the Senate of Maryland at the time chapter 153 of the First Extra Session of 1936 was passed, and the term of his then service extends to January, 1939, the eligibility of the respondent for the office to which he was appointed depends upon whether the office was created, or its salary or profits were increased, by the act. If so, the respondent comes within the purview of section 17, and is

ineligible. An answer cannot be given to these questions until the legislation on the subject is reviewed.

The Acts of 1880, ch. 252, provided for two justices of the peace for every election district, except that in election districts 4, 5, 6, and 14 there was but one justice to be appointed for every one of these districts. There can be no question of the constitutionality of this enactment, which continued in force, without any attempt to change, until the passage of Chapter 12 of the Acts of 1888, which purported to authorize the appointment of two additional justices of the peace to serve at large for the four election districts which embraced the city of Cumberland and its vicinity. This last statute was followed at the same session by the passage of chapter 108, which created an additional justice of the peace for a particular election district, who was to be appointed from, and reside in, the village of Ellerslie or its immediate vicinity. Inasmuch as the acts passed in 1888 contained no other provisions than those mentioned, the two acts are unconstitutional, since it is held that the General Assembly may not provide for two justices at large for the portion of a county included in four contiguous election districts, nor prescribe a qualification of residence within the county. *Humphreys v. Walls,* 169 Md. 292, 300-304, 181 A. 735.

The next legislation was in 1902, when, by chapter 197, the three acts mentioned, which had been codified in the Code of Public Local Laws of 1888, vol. 1, art. 1, sec. 179, were repealed and re-enacted in section 179. By this modified section one justice of the peace was to be appointed by the Governor for every one of election districts 4, 5, 6, 14, 22, and 23 of Allegany County at a monthly salary of $50 in lieu of all fees in criminal cases or in which the State is a party. No other justices were to be appointed for these districts, which composed the City of Cumberland, until the expiration of their terms of office in 1904, when the succeeding section 179A provided that there should be appointed in 1904, and biennially thereafter, only four justices for the six districts,

and that these four should be justices of the peace at large for the said six districts, and everyone of these justices should receive a monthly salary of $60 in lieu of all criminal fees.

The Acts of 1902 made no provision for the appointment of the justice of the peace other than for the six named districts, and this omission was corrected by an amendatory statute passed in 1904, chapter 249. By this statute two justices of the peace were to be appointed for every election district, except that, in the same six districts, six magistrates at large and no more were to be appointed to serve until 1906, and that thereafter only four magistrates at large should be named for the six districts. The salary of the first six was fixed at $50 a month, and of the second four was raised to $60 a month. In 1906 (chapter 27) the statute was again repealed and re-enacted and the change made was to increase the number of the magistrates at large from four to six, and no more, in the same six election districts, and to fix the compensation at $50 a month. The statute was also repealed and re-enacted in 1908 (chapter 490, pp. 331, 332). By this legislation the only change attempted was to increase the salaries of the justices to $65 a month. By chapter 285 of the Acts of 1920, there was another repeal and re-enactment whereby the single alteration was to fix the salaries of the justices at large for said districts at $100 a month. The next change was by chapter 297 of the Acts of 1927. It prescribed two justices of the peace for every election district except for election districts Nos. 4, 5, 6, 14, 22, 23, and 29, in which but two justices of the peace were to be appointed, to be justices of the peace at large, and to be known and styled "The People's Court," with qualifications, jurisdiction, and powers, and a monthly salary of $300 for each of its justices. The portions of this legislation which relate to its constitutionality are so similar to those which the court had under consideration in *Humphreys v. Walls,* 169 Md. 292, 296, 181 A. 735, and there held unconstitutional, that the chapter

297 must be likewise pronounced invalid. The salary of each of the two justices was $300 monthly, and $50 of this amount was to be paid by the municipality of Cumberland, which embraced the seven named districts. By chapter 292 of the same session, election districts Nos. 11, 12, 19, 24, 26, 28, 30, and 32, which were included in the municipality of Frostburg, were given but two justices of the peace at an annual salary of $1,200.

By chapter 316 of the Acts of 1929, the General Assembly repealed and re-enacted said section 179 of article 1, as amended by chapter 297 of the Acts of 1927, but did not change or affect chapter 292 of the Acts of 1927. As a result of the Act of 1929, two justices of the peace were to be appointed for every election district, with these exceptions: (1) for election districts Nos. 4, 5, 6, 14, 22, 23, and 29 (Cumberland), there should be but two justices, to be known and styled justices of the peace at large, and styled "The People's Court," with the qualifications, jurisdiction, and powers as by the statute conferred; (2) for election districts Nos. 18 and 27 there should be one justice of the peace at large, and no more; (3) for election districts Nos. 10 and 15 there should be one justice of the peace at large, and no more; (4) for election districts Nos. 9 and 25 there should be one justice of the peace and no more; and (5) for election district No. 8 there should be a justice of the peace at large and no more.

On the authority of *Humphreys v. Walls,* 169 Md. 292, 181 A. 735, not only is chapter 316 of the Acts of 1929 invalid, but chapters 292 and 297 of Acts of 1927, chapter 285 of Acts 1920, chapter 490 of Acts 1908, chapter 27 of Acts of 1906, chapter 249 of Acts of 1904, and chapter 197 of Acts of 1902 are also invalid to the extent that they attempt to restrict the appointment of justices of the peace to less than one for every election district in Allegany County. The appointment of a justice of the peace must be at large for the whole county or for an election district of the county; it may not be made for a group of districts within the county. *Supra; Day v. Sheriff,* 162 Md. 221, 226, 227, 159 A. 602.

The constitutional mandate, however, does not prevent the Governor from designating which of his appointees shall constitute a particular tribunal for the exercise of such jurisdiction and the performance of such specified duties as may be lawfully created and imposed by the General Assembly of Maryland in the exercise of its constitutional prerogative to prescribe. Section 42 of article 4 of the Constitution. *Day v. Sheriff*, 162 Md. 221, 226, 159 A. 602; *Levin v. Hewes*, 118 Md. 624, 644, 86 A. 233; *Green v. State*, 170 Md. 134, 144, 183 A. 526. The functions of a police justice and the People's Court in Baltimore City are familiar illustrations.

Under the decisions of this court, it is clear that, because of the mentioned unconstitutionality of some previous acts and of the portions of some other acts, there was no valid provision in existence, at the time of the passage of chapter 153 of the Acts of the First Extra Session of 1936, by which there were nine justices of the peace at large, nor under which two justices of the peace at large could sit for the trial of cases in the City of Cumberland. In view of these facts, does chapter 153 create a new office? The Constitution provides in section 1 of article 4 that: "The Judicial power of this State shall be vested in a Court of Appeals, Circuit Courts, Orphans' Courts, such Courts for the City of Baltimore as are hereinafter provided for, and Justices of the Peace"; and in section 42 of article 4 that the power of appointment of justices is in the Governor, by and with the advice and consent of the Senate, and that the justices shall have such jurisdiction, duties and compensation as they have theretofore exercised or shall be thereafter prescribed by law. It is, therefore, true that the ancient office of justice of the peace has attained constitutional recognition, and, in a certain sense, the office may be said to have been created by the Constitution, with the power delegated to the General Assembly to change the number of justices, and to prescribe their jurisdictions, duties, and compensation.

Thus, in *Levin v. Hewes*, 118 Md. 624, at page 629, 86

A. 233, 240, where the act under review increased the former number of justices fixed by law by five additional justices, is found this recognition of the problem: "But in our view there were no new offices created by the act of 1912 to be filled by the Governor, or, if there were, they were the offices of five additional justices of the peace." The statement quoted was made in connection with the question whether or not the statute created vacancies in office which the Governor had the power to fill until the next meeting of the General Assembly, and was not such a positive expression of the court's conclusion in a matter necessary to the decision of the case then on appeal that it may be given the effect of a judicial determination of the point. So, some further consideration becomes necessary.

The legislation of 1936 made it the duty of the Governor to appoint nine additional justices of the peace at large for Allegany County. These justices became constitutional officers, since their appointment was referable to the mandate of the Constitution, and within its contemplation. The additional justices are commissioned officials, who are required to take an oath of office; and to give to the state a bond for the faithful performance of the duties and obligations of office. They enjoy a fixed term of office and are entitled to a prescribed compensation, and, in the discharge of their judicial function, exercise a part of the State's sovereign power. The two of these additional judges, who shall sit for the trial of cases in the City of Cumberland, are to receive an annual salary of $3,000; and a further annual sum of $600 from the City of Cumberland as a salary for sitting as city police magistrate for that city. All the requisites of a new office are met. Further, it is indisputable that these additional officers had no legal existence before the act, and that they could not have severally come into official being except through the vivifying effect of the act. The nine additional justices thus endowed with full magisterial jurisdiction, duties, and compensation, must be logically held to enjoy an office which was created by

the act within the meaning of the provision of the Constitution.

The respondent participates in the legislation of which he, while his then senatorial term of office is not yet at an end, has become its beneficiary in the office created and in its substantial emoluments. Thus the appeal at bar is a real illustration of what the clause was designed to prevent. In *Westernport v. Green,* 144 Md. 85, 88, 124 A. 403, 404, the court made this clear statement of the reason and purpose of the inhibition: "In the discussion of a provision of the same nature in the Constitution of the United States it is said in *Story on the Constitution,* sec. 867; 'The reason for excluding persons from offices who have been concerned in creating them or increasing their emoluments is to take away, as far as possible, any improper bias in the vote of the representative and to secure to the constituents some solemn pledge of his disinterestedness.' Construing such a provision in the Constitution of Wisconsin, the Supreme Court of that state said that it had the effect of 'forbidding the election or appointment of members of the Legislature to offices created or rendered more lucrative by themselves during the term for which they were elected such members.' "

Since the court is of the opinion that the act of the First Extra Session of 1936 did create the office to which the respondent was appointed as justice of the peace at large for the City of Cumberland, there is no question of an increase in the salary or profits of the new office to which the respondent holds a commission.

The court below based its order for the writ of mandamus to issue on this last discussed ground, and its order will be affirmed.

The appointment of an ineligible person is a nullity, except that the official acts of such a person are regarded as the acts of an officer *de facto.* So the official acts of the ineligible respondent, who has acted as a justice of the peace at large under a valid act but under an invalid appointment, are the acts of a *de facto* officer, whose

official acts, if otherwise lawful, and until the respondent's title is adjudged insufficient, are as valid and effectual, where they concern the public or the rights of third persons, as though he were an officer *de jure.* State v. Fahey, 108 Md. 533, 538, 539, 70 A. 218; *Koontz v. Burgess & Commrs. of Hancock,* 64 Md. 134, 136, 20 A. 1039; *Izer v. State,* 77 Md. 110, 115, 26 A. 282; *Claude v. Wayson,* 118 Md. 477, 84 A. 562.

With reference to the acts of the respondent before his title to office was adjudged invalid, there is no difficulty. *Supra.* The questions involved in this appeal have caused the court to review a number of statutes, and provisions of statutes, which it has found defective on the constitutional grounds heretofore stated. It follows that throughout an extended period, immediately preceding the statute of the First Extra Session of 1936, a number of justices of the peace discharged the duties of that office in Allegany County under purporting statutory authority which failed on constitutional grounds to authorize the appointments.

Since these invalid acts and parts of acts were inoperative, they did not affect the valid subsisting statutes with reference to the number and jurisdiction of justices of the peace for every election district of Allegany County. Under these unrepealed and valid statutes, appointments could have been lawfully made for every election district. The unlawful appointment, therefore, resulted from the fact that the appointments of the justices of the peace were made under and pursuant to an invalid statute or its invalid provisions, instead of pursuant to the valid statutes. This mistake occurred because the invalid statutes were erroneously regarded as an effective repeal of the valid statutes. Thus it happened that, throughout the entire period mentioned, the constitutional office of justice of the peace subsisted, but appointments of justices to fill the position were made under the wrong statutes. The unconstitutional statutes, however, were accepted by the public authorities as valid. The various governors of the State during this period,

by and with the advice of the Senate, appointed, pursuant to the terms of the unconstitutional terms of the laws, the number of justices of the peace specified, from time to time, and sent them their commissions, whereupon the several justices of the peace so selected and commissioned qualified in the usual manner and took the oath prescribed, and entered upon and discharged the duties and office of justice of the peace for Allegany County according to the tenor of the statutes currently assumed to be in force. The judgments thus rendered are not subject to collateral attack, and their validity may be sustained upon the theory that the justices so appointed were *de facto* justices. *Supra.*

It appears that there was throughout an existing office of justice of the peace which could be filled *de jure* by an appointment under a valid and unrepealed statute, but which could not be filled *de jure* by an appointment under an invalid statute, which purported to repeal and re-enact with amendments the existing and valid statute. In the mistake of law made in proceeding under the unconstitutional statutes and terms of statutes, the public and the public authorities acquiesced, as they did in the possession of the office, and the performance of its duties, by the incumbents so appointed. Under such circumstances as have been stated, the official acts of such persons should be recognized as valid on grounds of public policy, and for the protection of parties in actions and prosecutions, and of those having occasion for the official services or exercise of the functions of a justice. *Izer v. State,* 77 Md. 110, 116, 26 A. 282; *Ex parte State,* 142 Ala.' 87, 38 So. 835; *Wendt v. Berry,* 154 Ky. 586, 157 S. W. 1115; *State v. Poulin,* 105 Me. 224, 74 A. 119; *Burt v. Winona etc. R. Co.,* 31 Minn. 472, 18 N. W. 285, 289; *State v. City of Eveleth,* 189 Minn. 229, 249 N. W. 184, 186; *Lang v. Bayonne,* 74 N. J. L. 455, 68 A. 90; *Cooley on Const. Lim.* (8th Ed.) vol. 2 pp. 1354-1358; *Attorney General v. Lacy,* 180 Mich. 329, 146 N. W. 871, 876; *People v. Townsend,* 214 Mich. 267, 183 N. W. 177, 178; *Thompson v. Couch,* 144 Mich, 671, 108 N. W. 363; *State*

*v. Gardner*, 54 Ohio St. 24, 42 N. E. 999; *King v. Philadelphia Co.*, 154 Pa. 160, 26 A. 308; *State v. Board of Election Commrs.*, 196 Ind. 472, 149 N. E. 69, 71.

The rule established by the line of cases cited is that, although there is no *de jure* office, because the statute which provides for it is unconstitutional, there may be a *de facto* officer until the unconstitutionality of the act has been judicially determined. *Supra.* The rule stated is, however, in conflict with other decisions which maintain that an appointment to an office which has no legal existence cannot make the person so appointed an officer *de facto*. 22 *R. C. L.* secs. 312-315, pp. 591-595. The argument used in support of the latter rule is that the same reasons which require the acts of a *de facto* officer to be upheld so far as the rights of the public and third parties are concerned do not apply to sustain the necessity of recognizing an office as existing *de facto*. It is urged that, if the office has not been created and, so, not adopted into an organized system of government, its invalidity will not justify the recognition of its incumbent as an officer *de facto* until the act be judicially determined invalid. The fundamental assumption of this theory is that the attempt to create a new office is not likely to induce people, without inquiry, to make or to submit to the action of a person on the assumption that he is a duly accredited and empowered officer of the character of his representation. The leading case in support of this view is *Norton v. Shelby County*, 118 U. S. 425, 6 S. Ct. 1121, 30 L. Ed. 178. See 22 *R. C. L.* sec. 312, pp. 591-593. In this case the unconstitutional act proposed to create an office which had not theretofore formed a part of the governmental scheme and was an anomaly in the administrative system of county affairs in the State of Tennessee. See *Tulare Irrigation District v. Shepard*, 185 U. S. 1, 14, 16, 22 S. Ct. 531, 46 L. Ed. 773; *Anniston Mfg. Co. v. Davis*, (C. C. A.) 87 Fed. (2nd) 773, 779, 780; *United States v. Royer*, 268 U. S. 394, 396-398, 45 S. Ct. 519, 520, 69 L. Ed. 1011. So it presented no such conformity to established forms or

modes of governmental office as to induce acceptance and use by the public in a reasonable belief of its legality. In the instant case, the office of justice of the peace was of ancient origin and of customary usage by the people, and it became a part of the judicial system of the State of Maryland under her Constitution. The existence of the office of justice of the peace before the passage of the various acts mentioned takes the present case out of the line of cases represented by *Norton v. Shelby County, supra.* The unconstitutionality of these statutes of the Legislature of Maryland did not affect the office of justice of the peace under the Constitution, but were regulatory measures with respect to the number of justices, the exercise of their jurisdiction, and to their compensation.

The conditions are gratified for the operation of the rule that, under an invalid statute, providing for additional incumbents of the existing office under the Constitution, prescribing regulatory or administrative details of the exercise of their jurisdiction as magistrates, and fixing their compensation, the additional incumbents of this office are officers *de facto* until the act is declared unconstitutional. On the facts here presented, public policy required obedience from the citizens of the provisions of these public statutes, even though unconstitutional, so long as the statutes have not had judicial condemnation. If individuals who deal with public officers may in every instance challenge their authority or deny their right to discharge the duties of the office, until the courts of final resort have given the sanction of their approval to the validity of the statutes under which these officers were elected or appointed, the conduct of public affairs will be involved in doubt and confusion so far as these offices are concerned.

Since the Constitution provided for the office, and the statute, which purported to authorize the appointments of the justices to that office, was followed by their appointments by the Governor and their confirmation by the Senate, by the issuance of their commissions and by

their qualifying by taking a recorded oath of office, and by their performance of the duties and by their exercise of the jurisdiction and power conferred, it is unreasonable to require the public to inquire into or to show the title of the several justices. See *Green v. State*, 170 Md. 134, 144, 145, 183 A. 526. Under such circumstances, the highest considerations of public policy enforce the rule that the official so equipped with the muniments and *indicia* of a constitutional office will be regarded as an officer *de facto* until the statute under which he holds shall be adjudged invalid.

For the reasons assigned, the order of the court directing the writ of mandamus to issue will be affirmed.

*Order affirmed, with costs to the appellee.*