MILLER et al. v. COUNTY COMMISSIONERS
OF CARROLL COUNTY AND GRIER

[No. 288, September Term, 1960.]

*Decided July 17, 1961.*

The cause was argued before Brune, C. J., and Henderson, Prescott, Horney and Marbury, JJ.

*Wilson K. Barnes,* with whom was *John Wood* on the brief, for the appellants.

*D. Eugene Walsh* and *Donald M. Smith,* with whom was *A. Earl Shipley* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

Richard K. Miller, et al., residents and taxpayers of Carroll County, appeal from a decree dated August 31, 1960, dismissing their bill of complaint filed July 22, 1959, in which they sought a declaratory decree declaring null and void both a Resolution of the Board of County Commissioners of Carroll County (the Commissioners) creating the position of "Technical Assistant to the Commissioners" and the appointment of George A. Grier to that post. In addition to the declaratory relief so sought the appellants prayed that the Commissioners and Grier, the appellees, be preliminarily and permanently enjoined from effectuating any of the provisions of the Resolution and from paying to Grier out of public funds, or Grier's receiving from such funds, any of the salary stipulated in the Resolution. As a final prayer the appellants sought "such other and further relief as the nature of their cause may warrant or require." Under this prayer they now seek a decree requiring Grier to repay to the County all amounts paid to him as salary on the ground that such amounts were illegally paid.

The events leading up to the filing of the appellants' bill are clear and undisputed, though the motives behind the Commissioners' actions are viewed differently by the appellants and the appellees. This case seems to be a by-product of the processes of change and transition which often accompany the spread of suburban population and industrialization into communities which have previously been predominantly agricultural. As we read this record, we find the Commissioners well aware of their own limitations in dealing with such problems and of their need for expert advice and assistance in meeting them. Grier was the man whom they selected as well qualified to give them such help. Their overall purpose impresses us as entirely proper; their methods of accomplishing the early appointment of Grier are the target of

strong attacks by the appellants and they present serious problems.

The present case grows out of Ch. 304 of the Acts of 1959, approved April 3 and effective June 1 of that year. This Act was proposed by a bill introduced by the Senator from Carroll County at the request of the Commissioners. It repealed Section 45 B of the Public Local Laws of Carroll County, enacted in 1957, providing for the appointment of a county manager and enacted a new Section 45 B in lieu thereof reading in part as follows:

> "The County Commissioners of Carroll County are hereby authorized to appoint an Executive or Administrative Assistant to the County Commissioners, who shall receive such compensation and have such powers and duties as shall be determined and prescribed by said Commissioners. His term of office shall not extend beyond the term of the Board making the appointment, but he shall be eligible to reappointment * * *. *The person so selected shall be a registered voter and taxpayer in Carroll County.*" (Italics supplied.)

The new section further provides that the person appointed shall take the constitutional oath of office, that he may be required to give bond for the faithful performance of his duties and that his services may be terminated by the Commissioners on two months' written notice.

Why the Commissioners thought this local statute necessary in the light of the general powers conferred upon County Commissioners by Code (1957), Art. 25, §§ 1 and 3, (under which they later undertook to act), is not readily apparent. Nor is the reason for inserting the voter and taxpayer requirement, for at the very time Ch. 304 was going through the legislative process the Commissioners were considering or negotiating for Grier's employment, though they knew him to be a resident of Harford County and neither a voter nor a taxpayer of Carroll County.

Sometime in March of 1959 the Commissioners contacted

Grier and discussed his duties in Harford County and whether he would be willing to leave his position in Harford County for a position with similar duties in Carroll County. As a result, on April 15, 1959, Grier sent the County Commissioners the following letter:

"You will remember that I indicated last week that a letter would be forthcoming from me setting forth my understanding of the position for which your Board has asked me to consider. You will find below a summary of this understanding:

1. The position would generally be known as 'Executive Assistant to the Board of County Commissioners.'

2. The position would carry with it a responsibility solely to the Board of County Commissioners of Carroll County.

3. General duties would include the following:
   (a) supervise the general administration of the County Commissioners' office.
   (b) recommend official policies for consideration and adoption by the County Commissioners.
   (c) upon adoption of any such policies by the County Commissioners, the position would carry with it the responsibility to see that these policies were executed by all agencies, departments or personnel, accountable to the County Commissioners.
   (d) to provide such studies as may be necessary to maintain an efficient county governmental unit.
   (e) to maintain an amicable and satisfactory relationship with Federal, State, and other County agencies to insure proper coordination of county transactions.
   (f) to maintain an adequate public relations program.

4. At the appropriate time to aid in the guidance of any Planning and Zoning Commission toward a good basic planning program for Carroll County.

5. At the appropriate time to aid in the formulation of any Sanitary Districts as may be necessary.

6. Aside from recommending such policies as noted in (3b) above to aid the County Roads Engineer in developing a well balanced and economical program for road construction and maintenance.

7. The position will pay $12,000 annually and begin approximately June 1, 1959.

It is also my understanding that I would become a resident of Carroll County and that the Board of County Commissioners presently has proper authority for filling such position, the duties of which are mentioned above. * * *"

This letter was answered by the Commissioners by letter of April 17, 1959, in which it is stated that:

"The Board took up the matter of your letter of April 15 this morning, and we believe you have about fully covered the substance of our conversation when you were here.

We accordingly agree to all the stipulations set forth by you, except that since the bill recently passed by the Legislature authorizing us to employ an administrative or executive assistant requires the appointee to be a voter and taxpayer of the county, we feel that temporarily you would have to use some other title. The bill referred to was Senate Bill No. 486, which becomes effective June 1st.

Under Section 3 of Article 25 of the Code we believe we have the power to appoint necessary county employees, and therefore suggest that you use the title of "Technical Assistant to the County Commissioners", or any other title that might be more satisfactory to you, so long as it does not by implication place you under the authority of Senate Bill No.

486 until you can meet the voting and residence qualifications.

The Home Rule bill passed by the Legislature in 1947, which embodies Section 3 of Article 25, requires us to pass a resolution and then advertise the appointment and salary in one or more newspapers published in the County at least once a week for three weeks, and this all could be accomplished before June 1 so as to make your employment effective at that date.

We are willing to do this and would make the appointment for one year, with the understanding that a new contract will be negotiated as soon as you meet the qualifications for an Executive Assistant, and the period then to be covered by that contract would extend through the present term of office of the members of this Board.

We are particularly pleased that you have indicated a willingness to become a Carroll Countian, and we look forward to having you with us about June 1. * * *"

As a result of these negotiations and of some further discussion of salary, the Commissioners on May 4, 1959, adopted a "Proposed Resolution of the County Commissioners of Carroll County Appointing a Technical Assistant to the Commissioners and Fixing His Salary." Pursuant to the requirements of Code (1957), Article 25, Section 3 (r), the Commissioners published notice of their "Proposed Resolution" to establish, under the powers conferred upon them by Section 3 (d) of that Article, the position of "Technical Assistant," at a salary of $14,000 per annum. The proposed resolution outlined the duties of the position of "Technical Assistant" almost *verbatim* in the words of Grier's letter of April 15. The resolution and notice also recited explicitly that "after appropriate inquiry, investigation, and negotiation, the County Commissioners of Carroll County have selected for such appointment a person whom they consider fully qualified to fill the position aforesaid, and desire to make such

appointment effective at the earliest possible time; * * *."

A hearing was held on the "Proposed Resolution" on June 1, 1959, at which time a number of residents and taxpayers of Carroll County appeared and protested its adoption. Despite this opposition the Commissioners adopted it on June 9, 1959, and at that time appointed George A. Grier to the post.

Carrying their complaints to court, the appellants on behalf of themselves and any other taxpayers who might join in the suit and pay their proportionate share of the costs, instituted, on July 22, 1959, the Bill of Complaint from the dismissal of which they now appeal.

Within a month after the filing of this Bill the Commissioners purporting to act under the powers conferred upon them by Code (1957), Article 25, Section 1, appointed George A. Grier as a Supervisor of County Roads of Carroll County at a salary of $6,000 per year payable out of Roads Department funds, which salary was "to represent a proportionate part or share of his over-all salary of" fourteen thousand dollars per year. Pursuant to the power conferred upon them by Code (1957), Article 66 B, Sections 10-37, the Commissioners on August 10, 1959, passed an ordinance by which they established a Planning and Zoning Commission for Carroll County. At the first meeting of the Planning and Zoning Commission, on August 13, 1959, George A. Grier was selected by the Commission, with the consent of the County Commissioners, all of whom were present at the meeting, to serve as Director of Planning at a salary of $6,000 per year, "effective August 24, 1959, and which salary [was] to be considered a part of his total compensation of $14,000." On August 14, 1959, the Commissioners resolved that a study of the sanitary, water and housing needs of the County be made and that Grier was the man to do the job. For his work in this respect Grier was to receive a salary of $2,000, payable out of funds provided for this purpose, which salary also was to be considered a proportional part or share of his total salary of $14,000. Ten days after this last mentioned

appointment Grier commenced work as a "Technical Assistant to the County Commissioners."

The first questions of law which we shall consider are presented by the appellees' demurrers and answers which challenged the sufficiency of the bill on the ground that a court of equity lacks jurisdiction to try title to public office and also denied that declaratory relief was appropriate. We think that the Chancellor correctly rejected both contentions. As to trying title to public office, it is well established by many cases in this State, such as *Carey v. Jackson,* 165 Md. 472, 169 A. 922, that mandamus is the proper remedy to test the validity of such an appointment. However, where the validity of an appointment is a question, but not the primary question,—and the line may be a hard one to draw with precision—the jurisdiction of equity has been upheld. The question of whether or not the action of a municipal corporation is *ultra vires* may be important, as we think it is here, with regard to the power of the Commissioners to create the office of "Technical Assistant." The commissioners of a county can "exercise only the authority with which they have been expressly, or as a reasonable implication, invested by law;" *Montgomery County v. Md.-Wash. Met. District,* 202 Md. 293, 303-304, 96 A. 2d 353, quoting from this Court's opinion in *County Com'rs of Frederick County v. Page,* 163 Md. 619, 164 A. 182. Where it is alleged by a taxpayer that a municipal corporation has acted *ultra vires* and that such action injuriously affects his rights and property, a court of equity is a proper tribunal to restrain such action. *Gloyd v. Talbott,* 221 Md. 179, 182, 156 A. 2d 665; *McKaig v. Mayor & C. C. of Cumberland,* 208 Md. 95, 102, 116 A. 2d 384; *Pressman v. D'Alesandro,* 211 Md. 50, 54, 125 A. 2d 35; *Masson v. Reindollar,* 193 Md. 683, 687-88, 69 A. 2d 482; *Fluker v. City of Union Point,* 132 Ga. 568, 64 S. E. 648. This rule applies to such municipal corporations as counties. *Montgomery Co. v. Met. District, supra; Neuenschwander v. Wash. San. Co.,* 187 Md. 67, 48 A. 2d 593.

In view of our holding that equity has jurisdiction in this case, we think it clear that a court of equity may award de-

claratory (as well as injunctive) relief, if such relief is appropriate; and we deem it to be so. Uniform Declaratory Judgments Act, Code (1957), Article 31 A, Section 2; *Gloyd v. Talbott, supra; Pressman v. D'Alesandro, supra; Kirkwood v. Provident Savings Bank,* 205 Md. 48, 106 A. 2d 103; *Bachman v. Lembach,* 192 Md. 35, 63 A. 2d 641.

We come next to the question whether the Commissioners in the instant case exceeded their powers in creating the position of "Technical Assistant." It is to be noted that they undertook to create this position pursuant to their powers under Code (1957), Art. 25, Section 3 (d). Section 3 sets out many express powers of County Commissioners, one of which, stated in subsection d, is "To provide for the appointment and removal of all county officers and employees *except those whose appointment or election is provided for by the Constitution or public general or public local laws.*" (Emphasis ours.) The office of Executive or Administrative Assistant was provided for by Ch. 304 of the Acts of 1959, and that Act was effective before the Commissioners finally adopted the resolution which purported to establish the office of "Technical Assistant." Under Code (1957), Art. 25, Section 3, therefore, the Commissioners did not have the power to create a position in county government which in substance, though not in title, was the same as an office otherwise provided for by law, i.e., by Ch. 304 of the Acts of 1959. Nevertheless, the Commissioners attempted to do just that when they undertook to create the position of "Technical Assistant to the County Commissioners." The letters quoted and the "Proposed Resolution" referred to earlier in this opinion reveal too clearly for serious dispute that the position of "Technical Assistant" was in substance the same as the position of Executive or Administrative Assistant created by Ch. 304 of the Acts of 1959, and that the former position was merely created as a stop-gap measure to provide Grier with the time requisite to establish himself as a registered voter and taxpayer of Carroll County, thereby allowing him to qualify to assume the title provided in Ch. 304 for the position he would already be holding. It is true that Ch. 304 does not

spell out the duties of an Executive or Administrative Assistant to the County Commissioners and leaves it to the Board to spell them out. This, we think, they did by their approval of the specifications set forth in Mr. Grier's letter of April 15. They can scarcely be heard to challenge their contemporaneous construction of that Act, which is manifested by their correspondence with Grier.

The Chancellor, we think, should have declared the resolution purporting to establish the position of "Technical Assistant" invalid.

On June 9, 1959, following the hearing of June 1st, the Commissioners announced the appointment of Grier as "Technical Assistant to the Commissioners." Arrangements were made for him to assume his new duties on August 24, 1959, and he duly gave notice of his resignation to the County Commissioners of Harford County. This suit was instituted on July 22, 1959, and service of process was had both on the Commissioners and on Grier on July 28th.

The Commissioners then seem to have had some second thoughts. Though the Commissioners do not appear to have formally rescinded Grier's appointment as "Technical Assistant," their second thoughts resulted in the resolutions and actions in the first part of August, 1959, which brought about Grier's purported appointment to three separate offices, all newly created. In practical effect the Commissioners simply split Grier's employment and salary into three parts, without any perceptible difference in the sum total of his duties as "Technical Assistant" and with exactly the same aggregate compensation as the amount agreed upon as the salary of the "Technical Assistant." The validity of these new appointments is sought to be upheld, and was upheld by the Chancellor, under Sec. 1 of Art. 25 of the Code (1957). This section authorizes the County Commissioners of any County "to appoint road supervisors * * * and all other officers, agents and servants required for county purpose[s] *not otherwise provided for by law* or by the Constitution * * *." (Italics ours.) The shift from Sec. 3 to Sec. 1 did not, however, get away from the uncomfortable, limiting

phrase "not otherwise provided for by law," since it appears in each of these sections. In substance, Grier was still appointed to a position which was that provided for by Ch. 304 of the Acts of 1959, and at the time of his appointment (or series of appointments amounting to the same thing), he was ineligible under the terms of the Act. Equity looks to the substance and not to the form of a transaction. (*Union Trust Co. v. Resisto Manufacturing Co.,* 169 Md. 381, 383, 181 A. 726). We think that the Chancellor erred in upholding Grier's several appointments purportedly made under Sec. 1 of Article 25 of the Code as road supervisor, as Director of Planning and Secretary of the Planning Board, and as consultant and advisor with regard to a proposed Sanitary District, and that he should have held and declared each of these appointments invalid, and that he should have directed Grier's removal from those offices. For these errors, and because of the failure to declare invalid the resolution of June 9, 1959, purporting to establish the office of "Technical Assistant," the decree must be reversed and the case remanded for the entry of a decree in accordance with the views herein expressed.

In view of our above holdings, we find it unnecessary to pass upon the appellants' contention attacking the hearing held by the Commissioners on June 1, 1959. Nor do we find it necessary, at this time, to determine whether the publication requirements of Code (1957), Article 25, Section 3 (r) should have been met by the Commissioners before their creation of the three separate positions on August 10, 13 and 14, which they sought to establish under Sec. 1 of Article 25.

There remains for consideration the question of what action should be taken by the Circuit Court or by this Court with regard to payments made to Grier as compensation for his services. This case does not appear to be precisely on all fours as to its facts with any other case to which we have been referred or which our research has disclosed. It does not fit neatly in either the category of cases involving *de facto* officers or that of cases involving what are sometimes called

mere usurpers. We think it established law in this State that there cannot be a *de facto* officer unless there is a *de jure* office. *Kimble v. Bender,* 173 Md. 608, 625, 196 A. 409; *Buckler v. Bowen,* 198 Md. 357, 369-371, 84 A. 2d 99; which follow the Supreme Court's decision in the leading case of *Norton v. Shelby County,* 118 U. S. 425. (The *Buckler* case points out an error in a headnote to the *Kimble* case dealing with this rule which appears at 173 Md. 611.) At this point we meet the question, did Grier hold any *de jure* office? Under the views which we have already expressed neither the office of "Technical Assistant" nor any of the three parts into which it was sought to be split was validly created. In reaching these conclusions we have considered substance, not form. If we pursue that same line of thought, we find that Grier has actually been discharging the duties of the office of Executive or Administrative Assistant. That office is clearly authorized by Ch. 304 of the Acts of 1959, but there is a question as to whether the Commissioners have created it. Their actions in setting up the office of "Technical Assistant" and later of splitting that into three parts, amount to attempts at least to set up the full equivalent of the office of Executive or Administrative Assistant, but they were at pains to avoid saying in their resolutions that they were creating that office. However, if we remove the verbal camouflage with which they covered their action, they did in substance establish the office and they did appoint Grier to it, notwithstanding his lack of local qualifications as a voter and taxpayer. Thus, on the basis of the substance of what was done, Grier became a *de facto* officer improperly appointed to a *de jure* office, as did the ineligible appointee to a *de jure* office in *Kimble v. Bender, supra* (which did not, however, involve any question of compensation). The authorities seem to be unanimous that a *de facto* officer may retain compensation paid him for services rendered, even in a direct controversy with the governmental body involved. (The appellants' claim here is, of course, derivative.) See *United States v. Royer,* 268 U. S. 394; *Badeau v. United States,* 130 U. S. 439; *McKenna v. Nichols,* 295 Ky. 778, 175 S. W. 2d 121; *Jones v. Dusman,*

246 Pa. 513, 92 A. 707; 43 Am. Jur., *Public Officers*, § 491, p. 239; note, 93 A.L.R. 273, supplemented by 151 A.L.R. 960. There is another rule, thus stated in the section of Am. Jur. just cited and supported by some authorities in the above A.L.R. annotations, that "where the compensation was received without authority of law, it appears that a recovery may be had, as where authorities created an office without statutory authority to do so, or payment was made without authority of law and no services were rendered." See *Woodruff v. Shea*, 152 Ky. 657, 153 S. W. 1005.

Though this case does not fit neatly into either the *de facto* officer type of case or the "usurper" type, we think that it is much more like the usual *de facto* officer type. Since this is a suit in equity, and since we think that the case does not fall squarely within either rule to which we have referred, it seems appropriate to consider it in the light of equitable principles. Although we find a clear intention to evade the local voting and taxpaying qualifications set forth in Ch. 304 of the Acts of 1959, the lack of these qualifications does not indicate a lack of the qualifications needed for the discharge of the duties of the office. It must also be borne in mind that the Commissioners had the advice of an experienced and respected member of the Bar in following the course which they pursued, and it seems evident that they, their counsel and Grier all believed the actions to be lawful; and the Chancellor upheld their legal conclusion, though he characterized the Commissioners' action in severe terms. It also appears that the Commissioners did make some effort, though not a great one, to find a Carroll County voter and taxpayer whom they thought qualified for the position, that they found no such person and that they investigated Grier quite thoroughly and were convinced that he had the requisite experience and ability to do the work which they believed needed to be done. Grier, for his part, evidently had enough confidence in the right of the Commissioners to appoint him to give up his more or less comparable position in Harford County and some prospect of a raise in salary there which would have brought him some amount above the $10,000 he was then re-

ceiving but not so much as the $14,000 offered by Carroll County. Also, there seems to be no doubt that Grier has actually rendered services to Carroll County, and there is nothing in the record to suggest that this "laborer" was not "worthy of his hire."

We think that essentially this phase of the case resembles and should be governed by *Konig v. M. & C. C. of Baltimore*, 128 Md. 465, 97 A. 837. There, a contract for furnishing equipment for a city filtration plant was attacked as invalid because the bidding was not in accordance with applicable provisions of the city charter. A taxpayer's suit was filed to enjoin its being carried out after the contract had been awarded, but before work had actually begun. There much time elapsed between the filing of the suit and the decision of this Court on the first phase of the case, which reversed the decree of the trial court and held the contract invalid (*Konig v. Mayor & C. C. of Baltimore*, 126 Md. 606, 95 A. 478). Much of that delay was due to the plaintiff, as was pointed out in the later appeal. Here most of the delay seems not to have been attributable to the appellants. The case was tried on October 2, 1959, but for some reason not shown by the record, it was not decided until August 31, 1960. The effect of delay, however caused, could be serious here, as it clearly was in *Konig*. There, during the pendency of the suit, the filter installation was completed. This Court, notwithstanding its decision that the contract was invalid, refused to order either that the installation be removed or that amounts paid to the contractor be refunded. The invalidity there was said to be due to a technical non-compliance, and it was pointed out that the City, its legal advisors and the contractor all believed the contract to be valid. Here we cannot characterize the overriding of the statutory voting and taxpaying requirements as only a "technical violation", as this Court characterized the error in bidding in *Konig*, but it does not seem and certainly is not shown to have impaired the value of the services rendered to the County. To permit the appellants, through this derivative suit, to compel Grier to refund all monies paid him by the County would seem to us inequitable

both as imposing a penalty on Grier and as conferring an unjust enrichment upon the County to the extent of the value of his services. We find no countervailing public policy here which would compel an opposite result, and we think the second *Konig* decision applicable and controlling here.

We may add by way of postscript to this lengthy opinion dealing with an apparently bitter controversy that it appears quite probable that by reason of the lapse of time the lack of Grier's qualifications as a voter and taxpayer of Carroll County has long since been cured. How far, if at all, this might affect the amount of possible recovery if we did not think *Konig* controlling, is a question upon which we need not and do not express any opinion.

> *Decree reversed and case remanded for the entry of a decree in conformity with this opinion; the costs of this appeal to be paid by the appellees.*